Thomas L. Feher, Esq.
**THOMPSON HINE LLP**
127 Public Square
Cleveland, Ohio 44114
Telephone: (216) 566-5500
Facsimile:  (216) 566-5800

*Attorneys for Seyfarth Shaw LLP*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| YANN GERON, as Chapter 7 Trustee of Thelen, LLP | : | 12 Civ. 1364 |
| Plaintiff, | : | |
| -against- | : | Hon. William H. Pauley III |
| SEYFARTH SHAW LLP and PARTNER DOES, | : | DECLARATION IN SUPPORT |
| Defendants. | : | OF AND SUPPLEMENTING THE RECORD REGARDING SEYFARTH SHAW LLP'S MOTION FOR JUDGMENT ON THE PLEADINGS |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

1.     My name is Thomas Feher and I am counsel for Defendant Seyfarth Shaw, LLP.  I make this declaration in support of and as supplementation of the record regarding Seyfarth's Motion for Judgment on the Pleadings.

2.     The reasons why the supplemental information is relevant are set forth in my letter to the Court dated August 21, 2012.

3.     Exhibits A-1 through A-13, attached hereto, were originally a single document received electronically from the New York State Archives.[1]  That document was obtained through our efforts to identify the underlying record for the New York Court of Appeals opinion in *Stem v*

---

[1] The original document was too large to file electronically as a single document and, therefore, was split into these individual documents.

*Warren*, 277 N.Y. 538 (1920), an opinion that has been discussed in detail in these proceedings and others relevant here.

4.      In these efforts, we contacted the New York Court of Appeals seeking the underlying record.  We were informed that the New York State Archives is the official repository for records and briefs filed in older cases from the Court.

5.      We then contacted the New York State Archives and followed their instructions for ordering the briefs filed in the Stem v. Warren case.  The Archives informed us that they would scan the briefs and transfer them in electronic form via secure link.

6.      The documents attached as Exhibit A-1 through A-13 comprise a true and accurate copy of the information contained in that secure link.  Exhibits B and C, respectively, are the emails from the New York State Archives attaching the invoice for the copying and providing the secure link.

7.      There are numerous bases for permitting Exhibit A-1 through A-13 to be part of the record herein, including Fed Rules of Evid. 803(16), 1003, 1004(d) and 1005.

8.      The record attached hereto is voluminous.  The following excerpts from the Plaintiff's brief in *Stem* relate to the positions at issue herein and support Seyfarth Shaw's statements at oral argument regarding the actual underlying facts and claims in the *Stem* case.

9.      "The controversy grows out of a partnership relation or joint adventure entered into between two firms of architects, Reed & Stem and Warren & Wetmore, for the special purpose of accepting employment in connection with the designing and building of the present Grand Central Terminal Station in the City of New York, and certain large buildings which were planned and built in connection with that improvement."

   Ex. A-1 at 2

10.     The Firms entered into 2 agreements, one between themselves and a second "employment agreement" between themselves and the Railroad Company.

"The various members of the firm, parties to the [first] agreement, pledged themselves to carry out the directions of the Executive Head to the best of their ability. [Mr. Reed, the architect that later died during the project, was the Executive Head] It was provided that in the event of a vacancy in the potion of Executive Head "by resignation or *otherwise*, or upon the written request of the Railroad Company for a change in said Executive Head, the parties to abide by such determination (decision, fols. 277-80)."

Id. at 5-6

11. "The employment agreement was made on the same day (February 8, 1904). It was between the New York Central and Hudson River Railroad Company, party of the first part, and Messrs. Reed and Stem, copartners under the firm name of Reed & Stem, and the various members of the firm Warren & Wetmore, parties of the second part."

Id. at 6

12. "It was provided [in the employment agreement] that in case of [Reed's] death, or resignation as such Executive Head, or if the Company was dissatisfied with his services, the Company should have the right to and might at any time designate which one of the architects should be his successor as Executive Head (decision, fols. 283-7)."

Id. at 7

13. Reed died in November, 1911, well into the performance of the project.

14. "On November 16, 1911, while the plaintiff [Mr. Stem, the late Reed's partner]was absent from the City of New York, attending at the interment of Mr. Reed, the defendant Wetmore wrote a secret letter to Mr. Newman [of the Railroad] suggesting that a new contract was necessary because, as he claimed, by the death of Mr. Reed, the old contract was terminated. He enclosed a proposed contract which was "intended to follow the old form in all particulars except that Warren & Wetmore are the architects." He suggested taking up the matter with Mr. Newman in person at any time that might suit his convenience. He suggested further that the old arrangement be terminated as of November 15, 1911 (the day before), that accounts be settled as of that day, and that the new arrangements commence as of that day. His letter contained this significant clause: "You will note that under clause 'Sixth' of the contract between your Company and the Architects you have the right to terminate the agreement at any time" (decision, fols. 302-7). This letter was written without any suggestion on the part of the Railroad Company, and without the knowledge or consent of the plaintiff or the Reed estate (decision, fol. 305)."

Id at 11-12

3

15. "On December 19, 1911, the Railroad Company gave notice to the interested parties of its intention to terminate the employment of the Associated Architects, the termination to become effective on December 31, 1911… ."

    Id. at 11-13

16. "The claim of the plaintiff and the Reed estate …. is that the defendants have taken an unfair and illegal advantage of the trust and fiduciary relationship growing out the relations of the parties as fixed and determined by their association agreement and their subsequent employment in connection with the things contemplated thereby."

    Ex. A-1 at 3.

17. "The underlying question involved on the appeal is whether a surviving partner, by taking advantage of the death of one of the firm, may bring [about] the cancellation of a revocable contract running in favor of the firm, and then, by means of a new contract, place himself in the very position which the firm formerly occupied, thus taking for his own benefit the profits which would have resulted from the uncompleted work in the contract had not been canceled."

    Ex. A-1 at 2.

    18. "We have called attention to the fact that there was no dissatisfaction on the part of the Railroad Company with anything that had been done, either by Mr. Reed or Mr. Stem, throughout the employment. No reason why the plaintiff could not continue working in harmony with the defendants Warren and Wetmore appears."

    It was the plaintiff's claim (and this has been sustained by the Courts below) that the termination of the 1904 contract and the substitution of the new contract were brought about at the suggestion of the appellants for the very purpose of excluding the plaintiff, and the estate of his deceased partner, from the profits of the work which had then been assigned to the Associated Architects and upon which, on December 31, 1911, they were working as uncompleted business (decision, fols 335-6)"

    Id. at 14

19. As demonstrated by the foregoing, Stem was not a case of obligations to account for all work that was unfinished when a partnership dissolved. It was a case involving a claimed breach of fiduciary duty for inducing a customer to cancel an otherwise existing and performable agreement. Thelen could no longer perform its agreements with its clients due to its dissolution.

4

Dated: August 24, 2012
       Cleveland, Ohio

                                                Respectfully submitted,

                                                SEYFARTH SHAW LLP

                                                By: /s/ Thomas L. Feher
                                                Thomas L. Feher
                                                127 Public Square
                                                Cleveland, Ohio
                                                TELEPHONE: (216) 566-5532
                                                FACSIMILE:  (216) 566-5800
                                                E-mail: tom.feher@thompsonhine..com

                                                *Attorneys for Seyfarth Shaw LLP*

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that he caused the above Declaration in Support of and Supplementing the Record Regarding Seyfarth Shaw LLP's Motion for Judgment on the Pleadings to be filed with the United States District Court for the Southern District of New York and served on all counsel of record via the Court's ECF system.

Dated: August 24, 2012

:  /s/ Thomas L. Feher
Thomas L. Feher