33

| | |
|---|---|
| Restaurants and Bar | 300,000.00 |
| Concessions, News-stand, Florist, Barber Shop, Carriages, Telegraph, Telephone, Broker, etc., | 60,000.00 |

Gross Annual Income ........... $1,440,000.00

## ANNUAL EXPENSES.

| | | |
|---|---|---|
| Ground Rent | $100,000.00 | |
| Taxes | 100,000.00 | |
| Interest, 1st mortgage bonds | 225,000.00 | |
| Interest, 2nd mortgage bonds | 60,000.00 | |
| Pay roll | 325,000.00 | |
| Fuel, water and light | 100,000.00 | |
| Advertising | 25,000.00 | |
| Insurance | 25,000.00 | |
| Printing | 25,000.00 | |
| Depreciation on furniture | 50,000.00 | |
| Total | | $1,035,000.00 |
| Net Annual Income | | $ 405,000.00 |

Continued:

| | |
|---|---|
| Net Annual Income | $ 405,000.00 |
| Sinking Fund | 100,000.00 |
| Balance | $ 305,000.00 |
| Dividend on Preferred Stock | 105,000.00 |
| Balance | $ 200,000.00 |

Exhibit A-6

31

It is proposed that the sinking fund of $100,000.00 is used in reducing the first mortgage bonds commencing the third year, and that after paying the preferred dividend the surplus remaining is to pay off the second mortgage bonds until entirely paid off, after which time the annual expenses will be reduced $60,000.00 per year, making the net annual income ............ $465,000.00

Sinking Fund ................................................ 100,000.00

$365,000.00

Dividend on preferred stock ............ 105,000.00

Surplus for Common Stock ............ $260,000.00 or a dividend of 17%

Exhibit A-6

35

## Plaintiff's Exhibit 42.

Telephone                          314 Madison Avenue
2741—Murray Hill                        New York

### GRAND CENTRAL STATION
### ARCHITECTS

Warren & Wetmore                    Reed & Stem

When answering letter mention subject..........................

April 20th, 1910.

Mr. W. H. Newman,
    Grand Central Sta., N. Y. City.

Dear Sir:—

Mr. Graham called upon us yesterday and went over the plans and the suggestions of a low building at Vanderbilt Avenue and 43rd Street corner.

You will note, as per the memorandum letter attached, that we have suggested adding the banquet room for the Hotel in this low part. Mr. Graham seems to be very well pleased with these changes; considering that the lowering of the floor is of great advantage.

I have confirmed my conversation with him by memorandum letter, copy of which is attached, and he says that the data given him is all that he needs at present.

Yours truly,

GRAND CENTRAL STATION ARCHITECTS,
.....................................................Executive.

CAR/L

(The above has the word "Void" written across its face.)

Exhibit A-6

36

## Plaintiff's Exhibit 43.

## GRAND CENTRAL STATION
## ARCHITECTS

Warren & Wetmore                    Reed & Stem
April 20th, 1910.

Mr. E. R. Graham,
    Holland House, N. Y. City.

Dear Sir:

        In confirmation of our interview this
morning.

    From our study of the supports under the pro-
posed building between Madison Avenue & Van-
derbilt Avenue, 43rd and 44th Streets we cannot
advise the support of as high a building as shown
by your preliminary drawings on the south-east
corner of the block.   The exact space lacking
proper support we cannot give you at this time,
but is approximately 85′ on 43rd St., and 120′ on
Vanderbilt Av.

    We propose for your consideration the limit-
ing of the height of the building on this corner
to provide for a higher incoming waiting room of
the Railroad Company, and for banquet hall over
same.

    We consider it possible, by increasing the
height of this part of the incoming station, to
decrease the height of the northerly end of same
so that you may have the space extending from
44th Street along Vanderbilt Avenue approxi-
mately 120′, with floor at elevation of 5′ above
the street level.

    Under this arrangement we also think it pos-
sible to allow the floor for the 25′ on 43rd Street,

Exhibit A-6

37

next west of the aforesaid 85′, to be placed at the sidewalk level, with a possible incline so as to give head room to the Cab Stand underneath.

As I explained to you, our study of this part of the Terminal has not been sufficient to give you definite data, and the above data is to be considered as tentative for your preparation of new studies.

Yours truly,

GRAND CENTRAL STATION ARCHITECTS,
C. A. REED, Executive.

CAR/L

Exhibit A-6

38

**Plaintiff's Exhibit 263.**

(Copy)

TELEGRAM.

May 4, 1910.

E. R. Graham,
  c/o D. H. Burnham & Co.,
    Railway Exchange Bldg.,
      Chicago, Ill.

When are you coming here?

GUSTAV BAUMANN.

39

## Plaintiff's Exhibit 258.

(Copy)

TELEGRAM

May 6, 1910.

E. R. Graham,
c/o D. H. Burnham & Co.,
Railway Exchange Bldg.
Chicago, ILL.

Have you forgotten Newman sails this month.
Am afraid you will be too late.

GUSTAV BAUMANN.

Exhibit A-6

40

## Plaintiff's Exhibit 265.

(Copy)

TELEGRAM.

May 8th   10

E. R. Graham
1326 Astor St    Chicago    Ill

I understand Mr. Newman sails May twenty sixth.

GUSTAV BAUMANN.

41

## Plaintiff's Exhibit 266.

(Copy)

TELEGRAM.

May 18, 1910.

D. H. Burnham & Company,
　　Railway Exchange Building,
　　　　Chicago, Ill.

　Where are plans?  You were to mail me some every day.

GUSTAV BAUMANN.

42

## Plaintiff's Exhibit 268.

(Copy)

TELEGRAM.

May 19, 1910.

D. H. Burnham & Co.,
    Railway Exchange Building,
       Chicago, Ill.

 Send messanine floor plan.   When is Graham coming?

GUSTAV BAUMANN.

Exhibit A-6

43

## Plaintiff's Exhibit 269.

New York,

May the Twenty-sixth,
1910.

W. H. Newman, Esq.,
    New York City.

My dear Mr. Newman:—

Please find enclosed, the memorandum, upon which I am willing to enter on a lease for your property on Madison Avenue and 43rd and 44th Streets.

Very truly yours,

GUSTAV BAUMANN.

(One Enclosure.)

Railway Company to furnish that portion of the block bounded by Madison and Vanderbilt Avenues, 43rd and 44th Streets, not used for railway purposes, under lease for 21 years, with the renewal at option of Lessee for an additional 21 years, at rental of $100,000 per annum on the land for the first 21 years. At the end of that period the land to be revalued and the rental thereon to be 4½% on valuation, but not less than $100,000. per annum.

A hotel building to be constructed thereon, at an approximate cost of $5,800,000 of which $1,300,000 is to be provided by the Lessee, and which shall be used for the first construction work of the building.

The remainder of the building cost approximately $4,500,000 to be provided by the Lessor, on which an annual rental of 6% ($270,000) is to be paid until the Sinking Fund, hereinafter mentioned, is sufficient to cover the entire investment by the Lessor in the building.

At the end of the sinking fund period, which will be in about twenty-eight years, the Lessee will only pay the rental on the ground.

The Lessee in addition to the above rentals of $100,000 on the land, and $270,000 on the building, is to pay as a sinking fund to the Lessor, 2% annually on the $4,500,000. and to be allowed 4% compound interest thereon.

The Lessee to pay taxes, insurance, water rents and all assessments on the lease property.

The building to be completed in August, 1912, and fully furnished and equipped by the first of September 1912. The Lessee will form a company with the capital of $1,500,000 fully paid, to furnish, equip and operate said hotel.

The building to be erected by Messrs. D. H. Burnham & Company. or ...... proval of the plans and his Architects.

The building to become the absolute property of the Lessor at the end of the lease.

Exhibit A-6

45

## Plaintiff's Exhibit 216.

## THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

I, DWIGHT W. PARDEE, Secretary of The New York Central and Hudson River Railroad Company, HEREBY CERTIFY the following to be a correct transcript from the minutes of the proceedings of the Board of Directors of said company at a meeting held at the General Office, Grand Central Terminal, in the City of New York, on Tuesday, May 31st, 1910:

Mr. Newman explained at considerable length the plan for building a hotel on the block owned by this company, situated between Madison and Vanderbilt Avenues, 43rd and 44th Streets, this City.

After a thorough consideration the matter was favorably considered, and on motion, referred to the President and Mr. Newman for further negotiations as to the terms upon which the property can be leased.

D. W. Pardee,
Secy.

President Brown.
Mr. Newman.

Exhibit A-6

46

## Plaintiff's Exhibit 274.

(Copy)

TELEGRAM.

May 31, 1910

E. R. Graham,
  c/o D. H. Burnham & Co.,
    Railway Exchange Bldg.,
      Chicago, Ill.

My terms practically agreed to verbally.   He wants you to go on with Reed according to your proposition.

GUSTAV BAUMANN.

47

**Plaintiff's Exhibit 275.**

New York,

June the First,
1910.

W. H. Newman, Esq.,
   First Cabin Passenger,
      Steamship Adriatic,
         White Star Dock.

My dear Newman:

I have just received a telegram
from Mr. Graham, saying "Tell Mr. Newman I
will work in perfect harmony with Reed, and will
be on in less than ten days and see him."
   With kind regards, and Bon Voyage, I re-
main,

Very truly yours,

GUSTAV BAUMANN.

48

## Plaintiff's Exhibit 277.

New York,

June the Fourth,
1910.

E. R. Graham, Esq.,
  c/o Messrs. D. H. Burnham & Co.,
    Railway Exchange Building,
      Chicago, Ill.

My dear Mr. Graham:—

        Your telegram of yester-
day received. I send you enclosed, a copy of the
memorandum which I have given Mr. Newman,
and which was approved by the Board last Tues-
day, provided Mr. Newman will be able to finance
the $4,500,000. which of course is out of the
question, unless the financial situation should be-
come much worse by next September Tenth,
when he is due to return from Europe. Mr.
Newman impressed upon me the fact that the
cost of the building was extremely high, and that
they would wish to pass upon all the contracts
and expected to get the price considerably re-
duced. He also stated that Mr Reed would
probably be able to make the foundation in the
southwest corner such, that you could get at least
seven bedroom floors over the dome of their exit
well, and that the ceiling of the dome would be
probably only 15 feet above the street level.
However, these would be details which you and
Mr. Reed would have to study, and he would like
you to get into communication with him, just
during his absence would have to be made en-
as quick as possible. The drawing of the plans

Exhibit A-6

49

tirely at your own risk, but as long as you had made such offer, he thought it would be advisable to perfect them just as much as you possibly can before his return. Commission for your services to be 5%.

I have been thinking a good deal lately regarding the opening of the hotel, and if there was a possibility of doing so in January 1912, I think I would prefer it then, to waiting until September 1912. I notice from the latest reports that from next Monday, all trains are running in the temporary station and that they will begin to demolish the old Grand Central Station without further delay, in which case we might be able to arrange the excavating from the Grand Central Station.

I could not get anything in writing from Mr. Newman, but he assured me nothing but a panic, which might prevent him from financing the enterprise, would stop him from executing the contract immediately upon his return.

With kind regards, I beg to remain,

Very truly yours,

GUSTAV BAUMANN.

(one Enclosure)

50

## Plaintiff's Exhibit 374.

ERG

7th June, 1910.

Mr. Gustav Baumann,
    New York City, N. Y.

Dear Sir:

We beg to acknowledge receipt of your valued favor of the 4th instant to our Mr. Graham regarding the understanding which you have with Mr. Newman, and we are prepared to confer with Mr. Reed on the occasion of our Mr. Graham's next visit to New York, which will be in about a week, with a view to getting the necessary data regarding the tracks and underground work in the east portion of the lot, so as to enable us to commence with the working drawings, which we will do as quickly as we can arrive at conclusions with Mr. Reed, conferring with you, of course, from time to time regarding the matter.

You will observe by the prospectus which our Mr. Graham handed to you that we are to receive $300,000.00 for our full professional services. Our regular commission is 6%, which practically amounts to the sum named above, and you should remember that our work in this case has gone on for years, and has extended far beyond our regular professional limits. We charge no promotion fees, only our regular percentage, as per the schedule of the American Institute of Architects, a copy of which we

enclose. We are not willing to abate this percentage as the cost to us of doing our business has increased so much as to make net returns, even on the 6% basis, much less than formerly when the general custom was to charge 5%. Apart from this the provisions of your letter seem satisfactory and we will go on, although realizing that our expenditure may be totally thrown away, as will be the case if Mr. Newman for any reason withdraws.

Very truly yours,

D. H. BURNHAM & CO.

**Plaintiff's Exhibit 278.**

New York,

June the Tenth,
1910.

Messrs. D. H. Burnham & Company,
    Railway Exchange Building,
        Chicago, Ill.

Dear Sirs:—

Your favor of the 7th inst. received. You
are quite correct that the last prospectus, namely
the third, made by Mr. Graham, mentioned
$300,000 for professional services, but at Mr.
Graham's suggestion, said prospectus was never
shown to Mr. Newman, nor was the second one,
as far as I know, given to him.  Mr. Graham
did give Mr. Newman the first prospectus after
having made some preliminary plans, and in that
prospectus, the Architects' fees were put down
as $225,000, and the total cost of the building
including Architects' fees, $5,000,000.  If Mr.
Graham never mentioned to Mr. Newman the
percentage of your fees, which I must confess in
our joint interviews don't think ever came up,
Mr. Newman must have formed his opinion from
that prospectus, that 5% was your remuneration.
I have, however, no doubt that Mr. Graham can
convince Mr. Newman on the same argument
which he used in his letter to me, that the re-
muneration you ask for is a fair one.

The memorandum which I gave to Mr. New-
man, with Mr. Graham's approval, does not state

Exhibit A-6

53

the percentage you are going to charge, nor have we defined in said memorandum, the other condition which you are to fulfil in this enterprise, namely,

1—That you furnish the first $1,300,000 for construction for which you will accept 6% second mortgage bonds, to be repaid as speedily as possible, out of the yearly surplus earnings, and that under no circumstances more than 4% dividend on the common stock shall be paid, until all the second mortgage bonds are taken up.

2—That you shall subscribe $200,000 of preferred stock of the hotel company, or get subscriptions for that amount.

Please let me know whether this agrees with your understanding. I trust to have the pleasure of seeing Mr. Graham in New York before long.

Very truly yours,

GUSTAV BAUMANN.

54

**Plaintiff's Exhibit 279.**

New York,
June the Eighteenth,
1910.

E. R. Graham, Esq.,
Railway Exchange Building,
Chicago, Ill.


My dear Mr. Graham:

I just learned that Gov. Hughes has yesterday signed the bill exacting a distance of 300 feet from the entrance of a church to the entrance of a place with a liquor license.


GUSTAV BAUMANN.
Very truly yours,

55

## Plaintiff's Exhibit 382.

ERG                                          22nd June, 1910.

My dear Mr. Reed:

This will be handed to you by our Mr. Peirce Anderson who has charge of working up the plans for the Baumann Hotel.

We have been advised by Mr. Baumann that the Governor has signed a new law making it necessary for the entrance to any place having a liquor license to be 300 feet away from the entrance of a church. Will you please go into this matter with Mr. Anderson and help him in the arrangement of this entrance, and still meet your requirements for the new station at this point.

Any courtesies shown Mr. Anderson will be greatly appreciated by me.

Very truly yours,

E. R. Graham.

C. A. Reed, Esq.,
New York City, N. Y.

56

**Plaintiff's Exhibit 280.**

New York,
June the Twenty-third,
1910

Messrs. D. H. Burnham,
   Railway Exchange Building,
      Chicago, Ill.

Dear Sirs:

Your favor of the 20th inst. to hand. I am glad to be able to inform you that the new bill signed by Gov. Hughes, does not interfere with our entrance on 43rd Street. In fact, if, in the alteration of the new plan, you should want to go farther west, you could do so.

The law says that any entrance to a building, wherein liquor is sold, shall be at least 300 feet from the entrance to any church on the same avenue or street. As St. Bartholomew Church is on Madison Avenue, it does not interfere with our entrance on 43rd Street, but we have on 43rd Street on Fifth Avenue, the Synagogue, which has got a side entrance, east of Fifth Avenue, but said entrance is at least 280 feet distance from the corner of our building, therefore, as above said, the entrance on your last plans, is safe, or in the new plans which you are considering, you could move the entrance still further west.

Very truly yours,
GUSTAV BAUMANN,
Per E. M. C.

Exhibit A-6

57

## Plaintiff's Exhibit 281.

(Copy)

TELEGRAM

June 28, 1910

D. H. Burnham & Co.,
    Railway Exchange Building,
        Chicago, Ill.

Please mail immediately floor plans sub-base-
ment.

GUSTAV BAUMANN,

58

## Plaintiff's Exhibit 282.

(Copy)

TELEGRAM

Sept. 14, 1910.

E. R. Graham,
    c/o D. H. Burnham & Co.,
        Railway Exchange Bldg.,
           Chicago, Ill.

Can you be here next Monday morning for

conference with Reed and ex-president.
                    G. BAUMANN.

59

## Plaintiff's Exhibit 156.

314 Madison Avenue,

New York.

GRAND  CENTRAL  STATION  ARCHITECTS

Warren & Wetmore                    Reed & Stem

Sept. 16th, 1910.

Mr. W. H. Newman,
  Grand Central Terminal, N. Y. City.

Dear Sir:—

Confirming our conversation this morning, we would advise that the preliminary plans submitted by the D. H. Burnham Co., for Hotel located between Vanderbilt and Madison Avenues, 43rd and 44th Streets, would be, in our opinion, acceptable to the Railroad Company subject to the detail variations usually made in drawing working plans from preliminary plans, with the following exceptions:—

1. The main, or floor level, to be lowered from elevation 66 to elevation 62.5

2. The raising of the floor level of Smoking Room from elevation 66 to elevation 71.

3. For providing underneath said smoking room a Receiving Room for supplies an area of about 30′ x 70′.

Exhibit A-6

60

4. The limiting of the Hotel Basements to the building line on 43rd Street, instead of extending out to the curb line.

5. The eliminating of all lifts located in the sidewalks, and the restriction (on account of providing the above mentioned Receiving Room) to keep sidewalks entirely free from goods received by the Hotel.

6. Providing in the Hotel building for two vent flues carried up to the roof of the high part of the building, for use in ventilating the Railroad Company's Cab Stand and incoming station.

It is understood that the high part of the building, on the corner of Vanderbilt Avenue and 44th Street, may, of necessity, be narrowed or widened in order to secure proper support by the columns which are fixed by the tracks underneath.

Yours truly,

GRAND CENTRAL STATION ARCHITECTS.
C. A. REED, Executive.

CAR/L

## Plaintiff's Exhibit 157.

314 Madison Avenue,

New York.

GRAND CENTRAL STATION ARCHITECTS

Warren & Wetmore                    Reed & Stem

Sept. 16th. 1910.

Mr. W. H. Newman,
  Grand Central Terminal, N. Y. City.

Dear Sir:—

In connection with the proposed Hotel, mentioned in letter attached, it should be considered that, if the hotel is started immediately, it will not be possible for the Railroad Company to ex--cavate its part of the site with the benefit of train service and steam shovels, and therefore will increase the cost of this excavation.

It has become necessary to disconnect the heating system of the East side from the buildings on the West side of the Terminal property, and therefore, if this temporary building on this site is used this Winter, a temporary heating plant at a cost of about $3,000 must be installed.

I have arranged for this temporary plant, but am holding orders to start work, thinking it possible that a decision might be reached which would provide for the immediate removal of the Departments now occupying this space to the offices in the Main Station Building, thereby saving the expense of this temporary heating plant.

In my interview with Mr. Graham, this afternoon, it was arranged that Mr. Bauman would try to secure an interview with you next Monday morning, Sept. 19th.

Yours truly,

GRAND CENTRAL STATION ARCHITECTS.
  C. A. REED, Executive.

Exhibit A-6

62

## Plaintiff's Exhibit 283.

New York,
October the Twenty-fourth,
1910.

E. R. Graham, Esq.,
   c/o Messrs. D. H. Burnham & Co.,
     Railway Exchange Building,
      Chicago, Ill.

My dear Mr. Graham:

    I saw Mr. Newman last week, and he told me he was making some progress, and consequently I think we ought to get ready. Have you any plans to show me, based upon the alterations which were to be made, after your last interviews with Mr. Reed. I would like you to send them to me if you are not coming here soon.

Very truly yours,

GUSTAV BAUMANN.