153

## Plaintiff's Exhibit 180.

G—3, Hotel

October 11th, 1911.

Mr. W. H. Newman,
    Grand Central Station, City.

Dear Sir:—

We hand you herewith four (4) prints of our plan #5576 on which is shown the cab stand under the proposed hotel at 43rd and 44th Streets—Vanderbilt and Madison Avenues.

On this plan are shown the details of wall and floor construction which we contemplate using. There is a small plot plan on the sheet which locates the cab stand in relation to the Hotel.

You will note that there is no reference on the drawing to the actual names of the surrounding streets, so that the location of the building is not indentified by the drawing. Should there be any question, James Foster and Son can take the matter up direct with us and we will give any explanations necessary.

Very truly yours,
GRAND CENTRAL STATION ARCHITECTS.

--------------------------------------------------------

JFB/LMW.
Enc.
J. F. B.                                   C. A. R.

Exhibit A-10

154

## Plaintiff's Exhibit 181.

G—3, Baumann

D. H. BURNHAM & CO.,
Architects,
Railway Exchange,
#PA               Chicago. October 12, 1911.

PROPOSED HOTEL FOR MR. GUSTAV BAUMANN

Grand Central Station Architects,
New York City, N. Y.

ATTENTION of Mr. Leonard Schultze

Gentlemen:

We beg to acknowledge receipt of your
letter October seventh, also the blue prints re-
ferred to therein.  Our Mr. Graham is at present
out of the city, but immediately upon his return,
which will probably be within a week, your letter
and the plans will be brought to his attention.

Very truly yours,

D. H. BURNHAM & COMPANY

By PEIRCE ANDERSON

Schultze
J. F. B.                                      C. A. R.

Exhibit A-10

155

## Plaintiff's Exhibit 389.

(Copy Letter Graham to Baumann.)

D. H. Burnham & Co.

ERG                            17th October, 1911.

Dear Mr. Baumann:

I have just arrived home and have gone very carefully over the last set of drawings sent on by the Grand Central Station architects. We have cubed up the building on the basis of these plans, except that we used the story heights shown on our drawings of September 5th, and find that to get 1,000 rooms, together with the deep basement, the building will overrun the original estimate of 10,000,000 cu. ft. by about 1,000,000 cu. ft. I do not believe this can be built for less than 50 cents per cu. ft. which would amount to $500,000.00, and this $500,000.00 has not been provided. It will either be necessary to reduce the cost of the building or else provide for $500,000.00 more.

Very truly yours,

Gustav Baumann, Esq.,
   New York City, N. Y.

Exhibit A-10

156

## Plaintiff's Exhibit 420.

New York, 10-18-11.

D. H. Burnham Co.

Can you wire me approximate cost of Building from latest plans.

Gustav Baumann.

157

## Plaintiff's Exhibit 421.

Oct. 18th, 1911.

Gustav Baumann,
 Holland House,
  New York City, N. Y.

Telegram received.  Cost of building according to latest plans sent us by Grand Central Station Architects will be about Five hundred thousand dollars more than estimate of May Nineteenth, Nineteen ten.  Mailing letter Twentieth Century today.

D. H. BURNHAM & COMPANY.

158

## Plaintiff's Exhibit 182.

G—3, Hotel
Baumann

### NEW YORK CENTRAL LINES
Grand Central Terminal
Room 3004

W. H. Newman

New York Nov. 3, 1911

Mr. C. A. Reed,
Executive, Grand Central Station Architects,
New York City.

Dear Mr. Reed:

I have taken up the question of whether the cab stand under the Hotel would prevent getting Insurance at reasonable rates, and find that with proper protection, this will not stand in the way.

On the attached plan, the Insurance people have noted in red pencil what their requirements would be on the building as you planned it. This is merely sent you for your information, with request that you keep the blue print filed so that we can use the notation made by the Insurance people if, at some future date, we should conclude to erect the Hotel with a cab stand under it.

Yours very truly,
W. H. NEWMAN

Mr. Reed
J F B

Mr. Stem told Mr. Reed about this.

Exhibit A-10

159

## Plaintiff's Exhibit 183.

70 East 45th Street,

New York

### GRAND CENTRAL STATION ARCHITECTS

Warren & Wetmore                    Reed & Stem

Nov. 8th, 1911.

Mr. W. H. Newman,
 Grand Central Sta., N. Y. City.

Dear Sir:

 We hereby submit you Estimate on the Hotel located at 43rd Street and Madison Avenue.

 The total estimate, according to original plans with One Thousand bed rooms, will be $5,318,276:

 This estimate includes the finishing of the Hotel complete, with the exception of carpets, pictures, furniture and decorations of the bed room walls and ceilings.

 We believe it is possible to build a Hotel on these lines omitting the Ball Room and private Dining Rooms on the top floors, and making Eight Hundred bed rooms for approximately $4,000,000:

Yours truly,

GRAND CENTRAL STATION ARCHITECTS,
      A. H. STEM.

AHS/L
J. F. B.

Exhibit A-10

160

**Plaintiff's Exhibit 241.**

Telephone 6800 Murray Hill

*Cable—Warmore*

WARREN & WETMORE
Architects
16 *East Forty-seventh Street,*
*New York*

*Whitney Warren*
*Charles D. Wetmore*

November 16th, 1911.

William H. Newman, Esq,
Grand Central Station,
New York City.

Dear Mr. Newman:

I am enclosing proposed contract which is intended to follow the old form in all particulars except that Warren & Wetmore are the Architects. I would be glad to take the matter up with you in person at any time that may suit your convenience.

At the death of Mr. Reed the old contract is terminated and a new contract becomes necessary. I would suggest that the old arrangement be terminated as of the 15th day of November and accounts be settled as of that date and any new arrangements that may be made shall commence as of that date.

You will note that under clause "Sixth" of the contract between your Company and the Architects you have the right to terminate the agreement at any time.

Very truly,

CHARLES D. WETMORE.

Exhibit A-10

## Plaintiff's Exhibit 242.

THIS AGREEMENT, made this       day of November, 1911, by and between THE NEW YORK CENTRAL & HUDSON RIVER RAILROAD, party of the first part, hereinafter called the "Railroad Company," and WHITNEY WARREN and CHARLES D. WETMORE, co-partners doing business at No. 3 East 33rd Street, New York City, under the firm name or style of WARREN & WETMORE, parties of the second part, all of the said parties of the second part being hereinafter called the "Architects,"

WITNESSETH:

The parties hereto in consideration of the sum of One Dollar by each to the other paid, the receipt whereof by each is hereby acknowledged, hereby covenant and agree as follows:

FIRST: The Architects agree to act as Architects for the Railroad Company and to render all architectural services which may be necessary or required, subject to and in accordance with the provisions of this agreement, for or in connection with any building or buildings which may be erected on the present site of the Grand Central Station, bounded by 42nd Street, 45th Street, Vanderbilt Avenue and Depew Place, and for or in connection with any building or buildings which may be erected for any Express Company or Companies, between 46th Street and 47th Street, Madison Avenue and Lexington Avenue, all in the City

162

of New York, and for or in connection with
the erection of any other buildings or work
which the Railroad Company may from time to
time order or designate in writing. The loca-
tion of any building or buildings may be changed
from time to time by the Railroad Company
at its pleasure. The Railroad Company shall
be the sole judge of the work which shall be
designed and executed through the agency of
the Architects. The architectural services and
compensation therefor, herein provided for, shall
not apply to the excavation, retaining walls,
foundations, structures carrying streets, plat-
forms or tracks, nor to any other work which
the Railroad Company may elect to design and
execute itself or through agencies other than
the said Architects.

SECOND: The Architects covenant and agree
to devote their joint labor and talents to the
work which may from time to time be entrusted
to them by the Railroad Company, in such
manner and to such extent as to adequately
and properly perform all of the said work, and
hereby covenant and agree to be jointly respon-
sible to the Railroad Company for the proper
and satisfactory performance of all the archi-
tectural services herein provided for.

THIRD: It is hereby covenanted and agreed by
and between all the parties hereto that the said
shall be, and he is hereby named and
accepted by the parties hereto, as the Executive
Head of the architects. As between the rail-
road Company and all contractors of the Rail-
road Company the said Executive Head and
his successor or successors as such Executive

1C3

Head, shall be the agent and representative of the Architects in all matters provided for in this agreement. In case of the death or in case of the resignation of the said          his successor or successors as such Executive Head, or in case the Railroad Company shall at any time be dissatisfied with the said          his successor or successors as such Executive Head, the Railroad Company shall have the right to and may at any time, and from time to time, designate in writing which one of the Architects shall be the Executive Head. Such designation in writing, delivered to either of the Architects shall be binding and conclusive upon all the parties hereto.

Fourth: The Railroad Company covenants and agrees to pay to the Architects for all architectural work and for all architectural services herein provided for, the following percentages on the actual final cost of the completed buildings, such compensation to include all things and all services necessary or required for the proper prosecution and performance of said architectural work and services, including clerks and inspectors of the work, and all other agents and servants required by the Architects:

1. For preliminary plans and estimates as finally accepted by the Railroad Company......1%

2. For working plans and specifications complete, as finally accepted by the Railroad Company ....................2%

3. For supervision ....................1%

Total ....................4%

Exhibit A-10

164

FIFTH: The Railroad Company reserves, and the Architects covenant and agree that the Railroad Company shall, at all times, have the right to terminate the employment of the Architects upon the work or any part thereof herein provided for, by giving notice in writing to the Architects or their Executive Head of intention so to do; and the employment of the Architects under the provisions hereof shall be terminated and ended accordingly, upon such date as may be specified in any such notice in writing.

1. Should such employment be terminated as hereinabove provided after the completion of the preliminary plans and estimates and their acceptance by the Railroad Company, and before the beginning of the making of actual working plans and specifications, the Railroad Company shall pay to the Architects the 1% herein provided.

2. Should such employment be terminated as hereinabove provided after the making of the working plans and specifications has been begun, but not completed, the Railroad Company shall pay to the Architects the 1% herein provided for the preliminary plans and estimates and such portion of the 2% hereinbefore provided for working plans and specifications as may be agreed upon by and between the parties hereto.

3. Should such employment be terminated as hereinabove provided upon the completion of the working plans and specifications and their

Exhibit A-10

acceptance by the Railroad Company and before any work under the item of Supervision is ordered by the Railroad Company the Railroad Company shall pay to the Architects 3% as hereinbefore provided for preliminary plans and estimates as finally accepted by the Railroad Company and for working plans and specifications complete.

4. Should such employment be terminated as hereinabove provided after the preliminary and working plans and specifications have been completed and accepted by the Railroad Company and before the buildings are completed, the Railroad Company shall pay to the Architects the 3% hereinbefore provided for for preliminary plans and estimates as finally accepted by the Railroad Company, and for the working plans and specifications complete, and such portion of the 1% for supervision as may be agreed upon by and between the parties hereto.

5. Should such employment be terminated as hereinabove provided, before the final completion of the work the estimated cost of completion shall be adopted as the basis upon which to make the calculations.

SIXTH: It is covenanted and agreed by and between the parties hereto that all payments heretofore made by the Railroad Company to the associated firms of Warren & Wetmore and Reed & Stem on architectural work in connection with the said proposed Grand Central Station Building, Post-Office Building and Express Building, and other Buildings, shall be credited upon account of and be deducted from the

Exhibit A-10

166

amount of the compensation herein provided to
be paid by the Railroad Company to the Archi-
tects.

SEVENTH: The Railroad Company covenants
and agrees to pay the compensation hereinbefore
provided to the Architects as follows:  Ten
Thousand Dollars ($10,000) per month, payable
on or about the 20th day of each and every
month during the progress of the work, pro-
vided that the sum of all such payments, includ-
ing all payments heretofore made to the former
associated firms of Reed & Stem and Warren
& Wetmore, shall not, in the opinion of either
the President or        of the Railroad Com-
pany exceed at any time the total sum to which
said Architects may be entitled under the method
of compensation provided for in sections Fifth
and Sixth hereof.  If, in the opinion of the Presi-
dent or        of the Railroad Company the
sum of such payments at the rate of Ten Thou-
sand Dollars ($10,000) per month shall at any
time exceed the total sum to which said Archi-
tects may be entitled as aforesaid under the
provisions hereof, the said monthly payments
shall be suspended.  Upon the final completion
of the work to the satisfaction of the Railroad
Company, or in case of the termination of the
employment of the Architects as prescribed in
Section Sixth hereof, a final payment shall be
made to the Architects of the balance which may
be due to the Architects under any of the pro-
visions hereof.  Upon making such final pay-
ment the Architects shall give to the Railroad
Company a receipt in full for all the compensa-
tion herein provided for and shall release the

167

Railroad Company from all claims by reason of or on account of any work or services rendered by the Architects, or by reason of or on account of any of the terms or provisions hereof.

EIGHTH: It is hereby agreed by and between the parties hereto that all plans, drawings, estimates and specifications for the work herein provided for as prepared from time to time by the Architects shall be the property of the Railroad Company; and should the employment of the Architects be terminated as hereinbefore provided all drawings, plans, estimates and specifications, prepared up to the date of termination shall be the property of the Railroad Company.

NINTH: In case any disagreement shall arise between the parties hereto in reference to the proper construction of this agreement, or in case of the failure of the Railroad Company and of the Architects to agree upon any matter herein provided to be agreed upon, the Railroad Company and the Architects shall each choose a disinterested person who shall be an architect of good standing and repute and the two so chosen shall choose a third disinterested person who shall also be an architect of good standing and repute, and the three persons so chosen shall, on reasonable notice in writing to the parties hereto, determine such matter of difference, and the parties hereto shall abide by and comply with the decision so made by said three persons or by a majority of them. In case either the Railroad Company or the Architects shall neglect or refuse to choose a person to act as aforesaid,

168

after ten days notice in writing from the other party to make such choice, the party giving such notice may choose two disinterested persons who shall be architects of good standing and repute, and the two so chosen shall choose a third disinterested person who shall be an architect of good standing and repute to act with them, and the three so chosen shall proceed to act with the same effect as if chosen as first above provided.  The expense of such arbitration shall be paid for by the party against whom the decision may be made.

IN WITNESS WHEREOF, the party of the first part has caused its corporate seal to be hereunto affixed and this instrument to be signed by its President, and the parties of the second part have hereunto set their hands and seals the day and year first above written.

THE  NEW  YORK  CENTRAL  &  HUDSON RIVER RAILROAD COMPANY.

By ......................

President.

169

State of New York, } ss.:
County of New York,

On this          day of          , 1911,
before me personally came WILLIAM C.
BROWN, to me personally known and known to
me to be the President of THE NEW YORK
CENTRAL & HUDSON RIVER RAILROAD
COMPANY, the corporation described in and
which executed the foregoing instrument, who,
being by me duly sworn, did depose and say:
That he resides in the Borough of Manhattan,
City of New York; that he is the President of
the said THE NEW YORK CENTRAL &
HUDSON RIVER RAILROAD COMPANY, and
knows the corporate seal thereof; that the seal
affixed to the foregoing instrument is the cor-
porate seal of said Company and was affixed
thereto by authority of the Board of Directors
of said Company, and that he signed his name
thereto by the like authority as President of
said Company.

———

State of New York, } ss.:
County of New York,

On this          day of          , 1911, before
me personally came WHITNEY WARREN and
CHARLES D. WETMORE, to me personally
known and known to me to be two of the per-
sons described in and who executed the fore-
going agreement and they severally duly ac-
ledged to me that they executed the same for
the purposes therein mentioned.

Exhibit A-10

170

**Plaintiff's Exhibit 217.**

HOLLAND HOUSE
Fifth Avenue & Thirtieth Street,
N.Y.

Nov. 18th, 1911.

My dear Mr. Newman:

On returning a few days ago I was surprised at not finding an answer regarding the paper I left with you some weeks ago. On the other hand I do find the report current amongst hotel men & friends that we are out of the Central deal. If true, I think it would only be fair that I should hear this from you direct & for the interest of both parties, I will thank you to send me your decision promptly as promised. I again repeat to you that whatever minor alterations you may suggest, will have my prompt consideration.

Yours very truly,

Gustav Baumann.

To Wm. H. Newman, Esq.,
New York.

171

## Plaintiff's Exhibit 218.

Nov. 18, 1911.

My dear Mr. Baumann:

I have just received your letter of the 18th: The matter we have been discussing is of such importance to both your interests and ours that I think it can be better handled by a personal interview and I shall be glad to have you call and see me in relation to it any day of the coming week, at such time as will suit your convenience.

However, I have engagements for all of Monday, the 20th, and the morning of Wednesday, the 22nd; but will endeavor to hold the other time free until I hear from you.

Very truly yours,

W. H. Newman.

Mr. Gustav Baumann,
    Holland House, 5th Avenue & 30th Street,
    New York City.

Exhibit A-10

172

## Plaintiff's Exhibit 422.

New York, 11-28-11.

D. H. Burnham Co.
When do you expect Mr. Graham to be in New York.

Gustav Baumann.

## Plaintiff's Exhibit 368.

### THE NEW YORK CENTRAL & HUDSON RIVER RAILROAD COMPANY.

I, DWIGHT W. PARDEE, Secretary of The New York Central & Hudson River Railroad Company, HEREBY CERTIFY the following to be a correct transcript from the minutes of the proceedings of the Board of Directors of said company at a meeting held at the General office Building, Grand Central Terminal, in the City of New York on Wednesday, December 6, 1911:

Mr. Newman stated that upon the death of Mr. Charles A. Reed, the Executive Head of the Architects for the Grand Central Terminal, on November 12, 1911, the company had the right under the contract of February 8, 1904, with the Associated Architects, to either designate some one of the other Architects as the Executive Head or to terminate the employment of the Architects under the contract; and recommended that the latter course be pursued and the employment terminated as of December,—1911, and that a new contract be made with the firm of Warren & Wetmore to complete the work which has already been assigned under the original contract and any other which may be assigned to them, upon the same terms as those specified in the original contract and at no greater cost to the company; Warren & Wetmore to hold the company harmless as against the Associated Architects.

Upon full consideration of the matter, it was, on motion,

171

RESOLVED: That the President be, and he is hereby, authorized to give to the Associated Architects and the survivors of them mentioned in the contract of February 8, 1904, the Notice provided for in the "Sixth" paragraph of that agreement, terminating the employment of the Architects as of December,—1911; and it was

FURTHER RESOLVED: That the proper officers of the company be, and they hereby are, authorized to make a new contract with the firm of Warren & Wetmore, under which Warren & Wetmore shall agree to complete the architectural work on the buildings heretofore assigned to the Associated Architects under the original agreement or which may hereafter be assigned to Warren & Wetmore under the new contract, and under the same terms as those specified in the original contract and at no greater cost to the company than if the original contract had been completed by the Associated Architects.

D. W. PARDEE.
Secty.

President Brown,
Vice-Pres. Carstensen,
do      Place.

175

## Plaintiff's Exhibit 304.

(Copy)

TELEGRAM

December 11, 1911.

E. R. Graham,
  The Touraine,
    Boston.

Our friend wants joint conference Tuesday or Wednesday.   Answer.

Gustav Baumann.

Exhibit A-10

176

## Plaintiff's Exhibit 223.

# THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

I, DWIGHT W. PARDEE, Secretary of The New York Central and Hudson River Railroad Company, HEREBY CERTIFY-the following to be a correct transcript from the minutes of the proceedings of the Board of Directors of said company at a meeting held at the General Office Building, Grand Central Terminal, in the City of New York on Wednesday, December 13, 1911.

Mr. Newman explained at length a proposition for the construction of a building on the block between 43rd and 44th Streets, Madison and Vanderbilt Avenues, this City.

He then presented and read the following outline of such proposition:

The New York Central & Hudson River Railroad Company and the New York, New Haven and Hartford Railroad Company to construct a building to be used partly as a railroad station and the remainder for a hotel; the hotel portion to be built in accordance with plans prepared by the lessors and approved by the lessees, at an approximate cost of $5,500,000.

A Stock Company with a capital of $500,000. fully paid, to be organized by Mr. Gustav Baumann, who will be its first President, to lease the hotel portion of the building and pay therefor, in monthly installments, as follows:

For the first twenty-one years, $100,000. per annum land rental, and seven (7) per cent. on the

Exhibit A-10

cost of the building, also water rates, repairs to building and assessments of every kind; one-half (1/2) the taxes on that part of the land partly used by the railroad company, all taxes on remainder of the land, and all taxes and insurance on the hotel portion of the building.

There shall be included as part cost of the building, six (6) per cent interest on expenditures during construction, land rental at $50,000. per year during construction, together with five (5) per cent. for Architects' fees.

For the second lease period, the land rental to be four and one-half (4½) per cent. on revaluation of the land at the end of the first twenty-one years, but not less than $100,000. per year. Building rental to be seven (7) per cent. on original cost of building; taxes, insurance, water rates, repairs to building, and assessments, as provided for first term.

If option for renewal is exercised at end of first lease period and expenditures are required for repairs and renovations, the amount to be done shall be by agreement between lessors and lessees, but not exceeding a cost of $500,000. Failure to agree as to these expenditures shall be settled by arbitrators. When the amount of such repairs and renovations is fixed, the lessors shall take care of it to the extent of $250,000. and on such amount as exceeds $250,000. shall get as an additional rental during the term of the lease, seven (7) per cent. per annum.

The Leasing Company to give a bond of $500,000. with satisfactory individual securities of five bondsmen to the amount of $100,000. each, and in addition thereto, Mr. Gustav Baumann shall give an additional bond in the

Exhibit A-10

sum of $500,000. to guarantee the complete furnishing and equipping of the building by the leasing company as a first-class hotel, together with the amount of supplies to commence its operation as soon as the building is finished. In addition to the above, Mr. Gustav Baumann to give an individual bond for $100,000. that all of the terms of the leasing agreement will be fully carried out; this latter bond to run until one (1) per cent. on the cost of the hotel portion of the building, with interest at six (6) per cent. compounded annually, shall reach the sum of $500,000.

After consideration of the subject matter, he presented the following which was, on motion, adopted:

RESOLVED: That the President of this company be, and he is hereby, authorized to execute jointly with the New York, New Haven and Hartford Railroad Company, an agreement providing for the construction of a building and a lease of the property, substantially in accordance with the plans outlined by Mr. Newman.

D. W. Pardee,

Secty.

## Plaintiff's Exhibit 327.

## NEW YORK CENTRAL.

Proposition for construction of building on block between 43rd and 44th Streets, Madison and Vanderbilt Avenues.

The New York Central & Hudson River Railroad Company and the New York, New Haven & Hartford Railroad Company to construct a building to be used partly as a railroad station and the remainder for a hotel; the hotel portion to be built in accordance with plans prepared by the lessors and approved by the lessees, at an approximate cost of $5,500.000.

A Stock Company with a capital of $500,000 fully paid, to be organized by Mr. Gustav Baumann, who will be its first President, to lease the hotel portion of the building and pay therefor, in monthly instalments, as follows:

For the first twenty-one years, $100,000 per annum land rental, and seven (7) per cent on the cost of the building, also water rates, repairs to building and assessments of every kind; one-half ($\frac{1}{2}$) the taxes on that part of the land partly used by the railroad company, all taxes on remainder of the land, and all taxes and insurance on the hotel portion of the building.

There shall be included as part cost of the building six (6) per cent interest on expenditures during construction, land rental at $50,000 per year during construction, together with five (5) per cent for Architects' fees.

For the second lease period, the land rental to be four and one-half ($4\frac{1}{2}$) per cent on revaluation of the land at the end of the first

180

twenty-one years, but not less than $100,000 per year. Building rental to be seven (7) per cent on original cost of building; taxes, insurance, water rates, repairs to building, and assessments, as provided for first term.

If option for renewal is exercised at end of first lease period and expenditures are required for repairs and renovations, the amount to be done shall be by agreement between lessors and lessees, but not exceeding a cost of $500,000. Failure to agree as to these expenditures shall be settled by arbitrators. When the amount of such repairs and renovations is fixed, the lessors shall take care of it to the extent of $250,000 and on such amount as exceeds $250,000 shall get as an additional rental during the term of the lease, seven (7) per cent per annum.

The Leasing Company to give a bond of $500,000 with satisfactory individual securities of five bondsmen to the amount of $100,000 each, and in addition thereto, Mr. Gaustav Baumann shall give an additional bond in the sum of $500,000 to guarantee the complete furnishing and equipping of the building by the leasing company as a first-class hotel, together with the amount of supplies to commence its operation as soon as the building is finished.

In addition to the above Mr. Gustav Baumann to give an individual bond for $100,000 that all of the terms of the leasing agreement will be fully carried out; this latter bond to run until one (1) percent on the cost of the hotel portion of the building, with interest at six (6) percent compounded annually, shall reach the sum of $500,000.

181

RESOLVED: That the President of this company be, and he is hereby, authorized to execute jointly with the New York, New Haven & Hartford Railroad Company, an agreement for construction of the building and lease of the property, substantially in accordance with the above.

182

## Letter, Kittredge to Rossiter, attached to Voucher of November 21, 1912, (Plaintiff's Exhibit 29).

NEW YORK CENTRAL & HUDSON RIVER
R. R. CO.

U-B

New York, December 16, 1911.

Mr. E. L. Rossiter,
    Treasurer.

Dear Sir:—

I am sending to the Auditor of Disbursements, simultaneously with this communication, 13th and final contract estimate in favor of Messrs. Reed & Stem and Warren & Wetmore, in amount $1,748.08, under contract dated October 14th, 1909, in connection with professional services rendered in preparing plans and specifications, and supervision of construction of new passenger station at Watertown, N. Y.

This supersedes a previous 13th and final contract estimate in amount $394.24, recorded under Auditor's No. 58283, about which I wrote you on the 13th instant.

As to any outstanding collection vouchers which might be considered in connection with this voucher, I would respectfully refer you to the Auditor.

Will you kindly acknowledge receipt?

Yours truly,

Geo. W. Kittredge,
Chief Engineer.

Exhibit A-10