183

**Plaintiff's Exhibit 16.**

To

ALLEN H. STEM, survivor of the late copartnership firm of REED & STEM, composed of Charles A. Reed and Allen H. Stem: and

To

WHITNEY WARREN, CHARLES D. WETMORE, and LLOYD WARREN, survivors of the late copartnership firm of WARREN & WETMORE, composed of Whitney Warren, Charles D. Wetmore, Lloyd Warren and John E. Howe, and

To each of you as survivors of the late association formed by each and all of you with Charles A. Reed and John E. Howe, each then in full life, since deceased, as set forth and recited in and by the certain agreement made and entered into by and between the said respective co-partnership firms and the individual members of either thereof and of said association, of the one part, and The New York Central and Hudson River Railroad Company, of the other part, of date the 8th day of February, 1904, "for the purpose of acting jointly as architects for the railroad company on the work" in and by the said contract provided for: and

To

ALLEN H. STEM AND ALFRED FELLHEIMER, survivors of the late

184

copartnership firm of REED & STEM,
composed of Charles A. Reed, Allen H.
Stem and Alfred Fellheimer, successors
of the copartnership firm of REED &
STEM, composed as first above stated,
and

To

WHITNEY WARREN, CHARLES D.
WETMORE, and LLOYD WARREN,
late copartners under the firm name of

WARREN & WETMORE, successors of
the copartnership firm of WARREN &
WETMORE, composed as first above
stated: and

To

WHITNEY WARREN and CHARLES
D. WETMORE, copartners under the
firm name of WARREN & WETMORE,
successors of the copartnership firm of
WARREN & WETMORE, composed as
last previously stated:

You and each of you are hereby notified that
under and in pursuance of, and in exercise of
the option, right and privilege reserved by and
vouched and covenanted to the New York Central
and Hudson River Railroad Company in and by
Article "Sixth" of the agreement above men-
tioned, the said Railroad Company hereby sig-
nifies and evidences its intention to terminate the
employment of you and each of you, and of each
of your said copartnership firms, as architects
upon the work, and every part of the work men-

185

tioned in the said agreement, or to which it in any wise has relation, as well that specifically mentioned in said agreement, as also that which subsequent to the date of said agreement may have been brought within it, or rendered subject unto it, by order or designation in writing of said Railroad Company, or in any other wise. **Said** termination of employment to become and be effective at and upon the ending of the day, being the 31st day of December, 1911.

Dated, New York City, December 19th, 1911.

THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY,

By W. C. BROWN,
President.

Exhibit A-11

186

## Plaintiff's Exhibit 20.

NEW YORK CENTRAL & HUDSON RIVER
R. R. CO.

LAW DEPARTMENT

GRAND CENTRAL TERMINAL

New York, December 19, 1911.

IRA A. PLACE,
    Vice-President.

Mr. Allen H. Stem (survivor of the late co-
    partnership of Reed & Stem) and Messrs.
    Warren & Wetmore,
        Associated Architects,
            Grand Central Terminal.

Gentlemen:

    The contract of February 8th, 1904, between
this Company and the Associated Architects
having been terminated as of December 31, 1911,
and a new contract made with Warren & Wet-
more for the completion of the work, I think
it very desirable that you and Chief Engineer
Kittredge prepare to bring all necessary figures
up to that date so that they may be verified as
of that date by all parties interested.

    I am sending a similar letter to Mr. Kittredge
and to Messrs. Warren & Wetmore.

Yours truly,

IRA A. PLACE,
Vice-President.

187

## Plaintiff's Exhibit 390.

ERG

19th December. 1911.

Dear Mr. Baumann:

I enclose herewith a copy of the lease between William Filene's Sons Co., Tenants, and the Boston Real Estate Trust, Owners, which I consider a very carefully prepared contract, and believe you will find the details of this of value in your dealings with Mr. Newman.

Please return this lease to me when you are through with it, because it is the only copy I have.

Very truly yours,

E. R. Graham.

Mr. Gustav Baumann,
Holland House,
New York City.

Exhibit A-11

188

## Plaintiff's Exhibit 238.

Certificate of Incorporation of The Beau Site Company, dated December 22, 1911, filed in the office of the Clerk of New York County December 29, 1911. The Certificate of Incorporation is in the usual form. It states the name and purposes of the corporation, provides for capital stock of $3,000,000, of which $1,500,000 was to be common and $1,500,000 was to be non-voting preferred stock, entitled to 6% dividend before any dividend paid on common stock. It sets forth the directors for the first year, who were

George M. Pinney, 32 Nassau Street, N. Y. C.
Aaron C. Thayer,              "              "
Warren C. Van Slyke,          "              "
William C. Casey, Jr.,        "              "
Estelle Meyrowitz,            "              "

It shows the names and post office addresses of the subscribers to the certificate, as follows:

George M. Pinney, 32 Nassau St., N. Y. City,
      7 shares
Warren C. Van Slyke,          "              "
      5 shares
William C. Casey, Jr.,        "              "
      5 shares

189

**Plaintiff's Exhibit 423.**

New York, Dec. 26, 1911.

Mr. E. R. Graham,
  c/o D. H. Burnham & Co.,
    Chicago.

My dear Mr. Graham:

  Everything is working out in good shape here
—have the bond drafted to suit us and they
have accepted our bondsmen. We expect the
draft of the lease any day now and would like to
know if we can count on you on short notice, as
we naturally want you to look it over thoroughly
before we do anything—a wire will answer.

      Sincerely,

        John McE. Bowman.

190

**Plaintiff's Exhibit 391.**

ERG                                    27th December, 1911.

Dear Mr. Baumann:

   Yours of the 26th just received.   Glad to
know you are getting along so nicely.   Did you
receive the lease on the Filene Building, and is it
not of some assistance to you?

   As quickly as you have your general draft of
lease drawn up, please send a copy of it on to me
so that I can read it over here with Mr. Burnham
and be thinking it over and digesting it fully
previous to meeting you.

Very truly yours,

E. R. Graham.    

Mr. Gustav Baumann,
  Holland House,
    New York City.

191

## Plaintiff's Exhibit 18.

NEW YORK CENTRAL & HUDSON RIVER
R. R. CO.

GRAND CENTRAL TERMINAL

GEORGE W. KITTREDGE
    Chief Engineer          W.
    New York.

January 10, 1912.

Messrs. Reed & Stem, Architects,
    #5 East 42nd Street,
        N. Y. City.

Gentlemen:

  I send you herewith, for execution and acknowledgment on your part, contract in triplicate, covering the architectural services in connection with new Passenger Station, at Utica, N. Y.

  Will you kindly execute the contract, acknowledge the signature and have the seal of the Notary affixed thereto, returning the contract in triplicate, to me at your earliest convenience.

  Your copy of contract will be sent to you after I have executed it on behalf of the Railroad Company.

  Kindly acknowledge receipt,

Yours truly,

GEO. W. KITTREDGE,
        Chief Engineer.

Enclosures-three

Exhibit A-11

192

**Plaintiff's Exhibit 19.**

| | |
|---|---|
| Reed & Stem, | C.A.Reed |
| Associate | A.H.Stem |
| Architects, | A.Fellheimer. |

710 to 714 Transit Building
5 and 7 East 42nd Street,
New York.
601 to 605 Endicott Building
St. Paul

UTICA STATION.

New York, N. Y.,
January 12th,
1 9 1 2

Dear Sir:-

Acknowledging your letter dated January tenth, referring to contract for Architectural services in connection with the Utica Passenger Station.

We return herewith contract, in triplicate, bearing our signature and the acknowledgment of same by Notary Public.

Yours truly,

Reed & Stem.
Per
A. Fellheimer.

A.F.-X.
Mr. George W. Kittredge,
Chief Engineer,
N. Y. C. & H. R. R. R.,
0 E.45th Street, City.
Encs.)

193

**Letter, Kittredge to Rossiter, attached to voucher of November 21, 1912, (Plaintiff's Exhibit 29).**

NEW YORK CENTRAL & HUDSON RIVER
R. R. CO.

January 12, 1912.   A-H.

Mr. E. L. Rossiter,
      Treasurer.

Dear Sir:—

   I am informed that instructions have been given in your office to withhold payment of all vouchers in favor of Messrs. Reed & Stem and Warren & Wetmore, associated architects.

   The Architects are after me for payment in connection with the Watertown passenger station, and inasmuch as there appears to be no controversy over this item from our viewpoint, will you kindly advise me if the same cannot be paid.

        Yours very truly,

                Geo. W. Kittredge,
                  Chief Engineer.


Dear Mr. Place:—

   Please note above, and advise if we shall release this voucher.

1/15/12.                E. L. Rossiter,
                        Treasurer.

Exhibit A-11

194

## Plaintiff's Exhibit 424.

Holland House
Fifth Ave. & 30th St.

New York, Jan. 14, 1912.

My dear Mr. Graham:

Enclosed you will find draft of lease from
N. Y. C. As you will see there are many points
in it to which we cannot agree—some of which
we have marked—Kindly look it over carefully
and return by Wednesday if possible—We are
to have a meeting soon as we can manage it and
if you could come on it would fortify us con-
siderably.

Sincerely,

John McE. Bowman.

195

## Plaintiff's Exhibit 425.

New York Jan. 14, 1912.

D. H. Burnham & Co.
  Railway Exchange Bldg.
    Chicago, Ill.

Mailed you 20th century today draft of lease
Many impossible things in it add your views to
it and mail it back tuesday if possible. Important
now for Graham to be at our disposal.

GUSTAV BAUMANN.

Exhibit A-11

196

**Plaintiff's Exhibit 426.**

THE WALDORF-ASTORIA,
New York, Jan. 15, 1912.

My dear Mr. Graham—

We have draft of lease for N. Y. C. now and would like you to come over and look it over with us—Call us up at Holland any time.

Sincerely

JACK BOWMAN.

197

## Plaintiff's Exhibit 392.

### D. H. BURNHAM & CO.

ERG                                22nd January, 1912.

Dear Mr. Baumann:

I have carefully read over the form of Lease submitted to you by Mr. Newman, which is very voluminous and contains many clauses which, in my opinion, should be modified, and I make the following suggestions:

I have also carefully read over the Lease between the Greeley Square Realty Company and Gimble Bros., copy of which I enclose herewith. This is a twenty-one year lease and an Annual Rental of practically $700,000.00. This lease was prepared after some four months hard and constant study, and is the result of the effort of several firms of brilliant lawyers, ending with the criticism of John G. Johnson of Philadelphia.

Please especially note the clauses referred to below:

PAGE 2: I hope you will read this over carefully, because it seems to me that the general clauses of this lease are equitable and fair for you to incorporate in your lease. The description of the property and the portion referred to to be occupied by the railroads, must, of course, meet your condition, and to me it would seem advisable to have complete drawings to show just what exceptions are to be made regarding the space to be occupied by the railroads.

PAGE 1; RENT: You will observe this lease calls for monthly installments, in advance; instead of quarterly, in advance. I believe that

Exhibit A-11

193

monthly payments are usual, unless you have agreed to the quarterly payments.

PAGE 7, ARTICLE II: Observe the manner in which the insurance is cared for.

PAGE 8, ARTICLE III: Please note reference to assessments, taxes, water rates, etc.

PAGE 11, CLAUSE VI.: Observe how changes are to be provided for. This article was the result of a large amount of labor and many arguments on my part, but as you read it over and study it, I think you will agree that it is a very equitable one, both for the railroads and yourself. When this was finished, both Mr. Fisk, and his attorneys, stated that it was very fair.

PAGE 12, ARTICLE VIII: Note reference regarding assignment. I think on a lease running for twenty-one years some such clause should be inserted, which would mean, that in case of death it is possible to turn the property over, if the Estate should desire to do so. This would seem fair and equitable.

PAGE 15, ARTICLE II: Observe the clause regarding loss or damage by fire, and note the continuation of this clause on page 16, stating how the insurance money is to be paid, in case of such loss.

PAGE 16, ARTICLE III: This covers terms of renewal.

PAGE 18: Note the clause on Arbitration; it is very broad and equitable.

Both the parties to this Lease are New York corporations, and it has occurred to me that it would be advisable, if your attorney was to use this, to prepare a similar form of lease and submit it to the railroads, and then let me know what

Exhibit A-11

199

they have to say about it. Certainly there is
nothing in this form of lease that would be ob-
jected to by either party; it being drawn to abso-
lutely cover the interest of both.

Please return this lease to me when you shall
have finished with it, because it is the only copy
I have.

In addition to the above I would also sug-
gest the following:

1.   THE VENTILATING SHAFT:   This
should be very carefully checked so as to make
sure it is not a serious inconvenience to your
plan.

2.   The railroads should pay for the water they
use.

3.   You should insert a clause stating that the
railroad company shall not sub-let any portion
of the space occupied by them for purposes
which would interfere with any concessions in
connection with the hotel, such as a Buffet, Res-
taurant, Cigar Store, etc.

4.   The railroads should pay its pro rata of
taxes, both on the land and on the portion of the
building it uses.

5.   Make sure that you will have no trouble
getting a saloon license account of the church
across the street.

6.   ELECTRIC   CURRENT   &   STEAM
HEAT: This clause should read that electric
current and steam will be furnished at a rate as

Exhibit A-11

200

low as you are able to purchase it from any other responsible Public Service Corporation.

If there is anything else that I can do, please command me.

Very truly yours,

Gustav Baumann, Esq.,
  Holland House,
    New York City, N. Y.

201

## Plaintiff's Exhibit 427.

New York, Jan. 24, 1912.

Holland House,
  Fifth Ave. & 30th St.

My dear Mr. Graham—

I wired you today about leaving here Friday
for Chicago and you returning with us Mon-
day—The lease is now satisfactory to us and the
lawyers are now working on a few minor de-
tails—

The subject of letting the contracts, &c has got
to be settled before the lease can be finished and
Newman wants us all to get together and settle
it.   He is willing to do it any way that is satis-
factory to us, so there is nothing in the way of a
quick settlement.

Sincerely,

JACK BOWMAN.

202

## Plaintiff's Exhibit 428.

New York, N. Y. Jan. 24-12.

D. H. Burnham, Ry-ex Chgo.

Schultz Bowman and myself will leave here twentieth century Friday if Graham can give us saturday and sunday. Lawyers now settling technical details of lease and will be ready for us monday. Want graham to return with us monday to details of letting contracts and manner of building.

GUSTAV BAUMANN.

Baumann Hotel
  N. Y. City.

203

**Plaintiff's Exhibit 429.**

HOLLAND HOUSE,

5th Avenue & 30th Street,
New York City.

Jan. 24, 12.

D. H. Burnham & Co.,
  Chicago, Ill.

Dear Sirs:—

Your wire received saying that Mr. Graham
would be at the office Saturday—We will stop
at the office on our way from the train to the
"Blackstone"—Mr. Graham when last here spoke
of having some drawings made of typical bed-
rooms on a large scale—Kindly see that these
are ready for us.

Yours very truly,

JOHN McE. Bowman.

204

## Plaintiff's Exhibit 430.

New York, February 3, 1912.

D. H. Burnham & Co.,
    Railway Exchange,
        Chicago.

Gentlemen:

You will notice in the new typical floor plan forwarded to you by N. Y. C. architects that the width of each wing has been narrowed considerably. They claim this gives us a better lay-out and reduces the cost of construction by some $300,000. We are not sure that we like it as it does away with the line of rooms in each wing that we can connect up en suite. Kindly give us your candid opinion as to this. It also does away with the spacious closet room in this line.

Very truly,

JOHN McE. BOWMAN.

205

## Plaintiff's Exhibit 337.

TELEGRAM

G-3  Hotel.
Feb. 6, 1912.

LEONARD SCHULTZE,
  Grand Central Station Architects,
    314 Madison Ave., New York, N. Y.

Referring to your Diagram of levels handed to me on train do you not think it well starting at main lobby floor at sixty five kitchen at eighty one kitchen store room floor at ninety five feet six inches private dining room one hundred seven feet this adds three feet to main lobby floor and does not seriously reduce the other two.

E. R. Graham.

LS   file.

## Plaintiff's Exhibit 393.

(Copy Letter Graham to Baumann.)

### D. H. BURNHAM & CO.

PA                                6th February, 1912.

Mr. Gustav Baumann,
   New York.

Dear Sir:

We have looked over the floor plans which Mr. Graham brought back with him from New York, and in the main we approve very heartily of the general arrangement.

As regards the main lobby, we believe this too low, and would suggest that the kitchen floor be raised from plus 78 to plus 81, which will give about 14' 5" under the 1' 7" floor construction, instead of 11' 5" as now shown.

For the kitchen taking the height of 12' 11", or practically 13' clear height, would place the upper kitchen, or store room floor, at plus 95.5 instead of 92 as now shown. With 9' 11" clear head room on this floor, the private dining room floor would be, elevation 107, instead of 106.5, or only 6" higher than shown on diagram levels; in other words, we suggest lowering the head room on the upper kitchen, or store room floor for the benefit of the main lobby floor, and add only 6" to the height of the building. We believe these heights would be sufficient for the two kitchen floors, but we would not recommend anything less. The above will make the run from the kitchen to the main restaurant 13', instead of 10'. The increased steps in handing the service seems unobjectionable, and in any case the main floor lobby

height is of great importance and should not be less than 14′ 5″ in the clear.

For the typical floors, we very much doubt the desirability of narrowing the width of the two wings to as great an extent as shown on these drawings, for the reason that the rooms in the wings will be the best rooms in the house. We believe the depth of 17′ should be increased to 19 or 20 feet—at least for those rooms which face the court. The rooms in the wings, which should be the best rooms in the house, suffer at present from the location of vents, stairways and elevators, and we believe this should be modified and placed back at nearly the old depth of about 65′.

As regards the interior longitudinal corridor, it would seem that with six corner suites on each floor, or over 100 corner suites in all, you would not need the inside longitudinal corridor in order to have a sufficient number of locations where you could hook up a private suite independent of the main corridor. In order, however, to profit fully by the corner suites, we would recommend displacing the existing typical stairways one or two bays toward the west so as to get them further from the corner and permit the best possible grouping of the corner suites.

Have wired Mr. Schultze as per enclosed copy.

Please treat this letter to you as private, and leave me out of the discussion until I reach New York.

Yours very truly,

Enclo.

208

## Plaintiff's Exhibit 339.

## BAUMANN HOTEL.   TERMINAL HOTEL.

February the 6th, 1912.

| | |
|---|---|
| Cost of Building | $5,600.000.00 |
| Add carrying charges | 705,000.00 |
| Add Incoming Station | 700,000.00 |
| Total | $7,005,000.00 |

ITEMS OF CARRYING CHARGES:

| | |
|---|---|
| Rent | $100,000.00 |
| Interest | 175,000.00 |
| Taxes | 50,000.00 |
| Contingencies | 100,000.00 |
| Architects Fees | 280,000.00 |
| Total | $705,000.00 |

6 Feb. 1912,
    CDW
       File LS

### ROOMS.

1318 Rooms, including Private Ding.
964 Baths.
60 Servants Bed Rooms.
2 Dormitories 30 x 100.
9,969,222 total cubic feet.
File

    830                    Sheet 2
    60

    49,800

(Third Sheet same as first.)

Exhibit A-11

209

**Plaintiff's Exhibit 336.**

G-3 Hotel.
Feb. 8th, 1912.

Mr. E. R. Graham,
1417 Railway Exchange, Chicago, Ill.

Dear Sir:—

We are sending you this date one set of blue prints of such sketches of the new Hotel for Mr. Baumann as we have had finished up to date.

These have received Mr. Bauman's careful criticisms and tentative approval.

We desire also to acknowledge receipt of your telegram calling our attention to certain suggested modifications in the levels, and we are giving this matter our careful consideration and will discuss the same with you when we see you in New York.

Yours  truly,

WARREN & WETMORE,

———————————

LS/L

210

**Plaintiff's Exhibit 338.**

G-3  Hotel.

D.  H.  BURNHAM  &  CO.
Architects,
Railway   Exchange,

PA-#

Chicago,  February 13th, 1912.

BAUMANN  HOTEL.

WG
Schultze

Messrs.  Warren & Wetmore,
Grand  Central  Station  Architects,
New  York  City,  N.  Y.

Gentlemen:

We  beg  to  acknowledge  receipt  of  your  letter
of  February  8th  and  the  accompanying  set  of
blue  prints.

These  will  be  brought  to  Mr.  Graham's  atten-
tion  upon  his  return.

Yours   very   truly,

D.  H.  BURNHAM  &  CO.,

P.  A.

L.  S.  file.

Exhibit A-11

211

## Plaintiff's Exhibit 394.

ERG                               20th February, 1912.

Dear Mr. Baumann:

Now that the lease has been executed, I write
to ask if you will not kindly return to me Gimbel
and Filene leases which I sent on to you?

Yours very truly,<br>
E. R. Graham.

Mr. Gustav Baumann,
   Holland House,
   New York City.

212

## Plaintiff's Exhibit 198.

NEW YORK CENTRAL & HUDSON RIVER
R. R. CO.

GRAND CENTRAL TERMINAL.

Kn

George W. Kittredge,
    Chief Engineer,
        New York.

February 23rd., 1912.

Messrs. Reed & Stem,
    #7 East 42nd Street,
        New York City, N. Y.

Dear Sirs:

At a conference in my office on Wednesday, February 21st, at which were present Mr. Schultze and Mr. Stem, the statement was made by Mr. Schultze that Warren and Wetmore would be satisfied with any settlement with the Railroad Company as to compensation and fees due them as of December 31st, 1911, which would be satisfactory to Reed and Stem.

We are at work on getting up the details of these figures and expect to have them ready within the next week or ten days.

Mr. Stem stated that he expected to go South the latter part of this week or the first of next to be gone a considerable length of time. It occurs to me that before Mr. Stem's departure some arrangement should be made whereby we can check our figures against those claimed by the Architects, unless all parties are agreed that the checking of these figures and settlements based thereon as agreed to by Warren and Wetmore will be sufficient.

I am bringing this matter to your attention as he payment of additional fees for work done is lependent upon our reaching a satisfactory igreement as to the amounts due.

Exhibit A-11