213

## Plaintiff's Exhibit 340.

G-3 Hotel.

Feb. 27, 1912.

Balcom & Darrow
Mr. Schultze:

We herewith attach, for your information, one (1) print of Plan No. 6193, Scheme No. 4, showing the passenger elevators in the Southwest Bank for the Terminal Hotel. The Northwest Bank to be same plan only opposite hand with provision for service elevator to the south.

Yours truly,

C. R. P., M. E.

EW/T
Enc.
  File  2/27/12.
  E. W.

C. R. P.,

LS
JFB

214

## Plaintiff's Exhibit 341.

G-3  Hotel.

### TERMINAL  HOTEL.

2-29-'12.

Memo:
    Mr.  Schultze:
        Regarding the Terminal Hotel:

Can you not let me have some prints of the lower floors?

The only one I have up to date is one of the typical bed-room floor.

Yours  truly,

C. R. P., M. E.

CRP/T
LS   Send Place prints.
    J. F. B.

Exhibit A-12

215

**Plaintiff's Exhibit 342.**

G-3 Hotel.

REGARDING THE TERMINAL HOTEL.

Feb. 29th, 1912.

MEMO:

Yesterday afternoon at 2:30 P. M.  I was in consultation with Messrs. Baumann and Bowman at No. 19 West 30th St., regarding the garbage incinerator, laundry, kitchen and refrigerating layouts for the new Terminal Hotel.

Mr. Mann of the Morse Boulger Destructor Co. was present during the consideration of destructor.

Mr. Adolf Bender of the De La Vergne Machine Co. was present concerning the refrigerating equipment.  He agreed that the Ice Making Equipment should be on the roof of the Hotel.

Mr. Felsberg of the Troy Laundry Machinery Co. was present during the consideration of the laundry layout.

Mr. Buzzini, representing himself, with his partner were present during the consideration of the kitchen layout.

After the matters represented by the above people were talked over Messrs. Baumann and Bowman and the undersigned considered the typical lighting layout for the bedrooms.

Yours truly,

C. R. P., M. E.

CRP/T
JFB
LS

216

## Plaintiff's Exhibit 343.

G-3   Hotel.

## NEW TERMINAL HOTEL PLANS.

Mar. 4th, 1912.

Mr. Schultze:

This is to remind you that up to date I have not as yet received any ⅛″ scale plans for the new Terminal Hotel, as promised on Saturday.

Yours truly,

C. R. P., M. E.

CRP/T
LS file
JFB

217

## Plaintiff's Exhibit 226.

File—Orders for Work.

NEW YORK
CENTRAL
LINES

NEW YORK CENTRAL & HUDSON RIVER
R. R. CO.

New York, March 11th, 1912. ms

ADVICE NO. 3.

Messrs. Warren & Wetmore,
  No. 70 East 45th Street,
    New York City.

Gentlemen:

In accordance with the Agreement dated
December 19th, 1911, between the New York
Central & Hudson River Railroad Company and
your firm, you are hereby designated in writing
to act as Architects and proceed with the work
of preparing preliminary and working plans and
specifications, and supervising the construction of
a hotel building to be erected in the block between
Madison & Vanderbilt Avenues, 43rd & 44th
Streets, New York City. The work is to be done
in accordance with the above mentioned agree-
ment with the exception, that the total percent-
age to be paid you by the Railroad Company for
preliminary and working plans, specifications
and supervision is to be 5% of the final cost of

218

construction.   Partial payments may be made to you from time to time of an amount which the Chief Engineer may designate.

Yours truly,

GEO. W. KITTREDGE,
Chief Engineer.

The above outlined arrangement is satisfactory and accepted by us.
WARREN & WETMORE,

By Leonard Schultze.
Superseded by Order #19.

(The above bears a stamp "No. 1725 File Mar. 11, 1912".)

219

## Plaintiff's Exhibit 344.

G-3  Hotel.

March 16, 1912.

MEMORANDUM-TERMINAL  HOTEL.

Mr. Schultze:

We would be pleased to receive from you prints of the elevations on the Terminal Hotel as soon as you can furnish them to us.

Yours truly,

H. G. B.

HGB/RHD

Prints have been rec'd.

H. G. B.

JFB                                           LS

220

## Plaintiff's Exhibit 345.

G-3 Hotel.

## WEST SIDE PIPE SUBWAY IN CONNECTION WITH NEW BILTMORE HOTEL.

March 16th, 1912.

Mr. W. L. Morse,

Terminal Engineer, N. Y. C. & H. R. R. R.
Grand Central Station, City,

Dear Sir:

Regarding the west side pipe subway between 43rd and 45th Streets.

May we receive from you as soon as convenient the approval of this subway so that we can definitely decide upon certain pipes in connection with the new "Biltmore Hotel."

Yours truly,

WARREN & WETMORE,
——————————M. E.

CRP/T
JFB

Exhibit A-12

221

**Plaintiff's Exhibit 395.**

ERG                    19th April, 1912.

Dear Mr. Bowman:

Your good letter of the 17th just received.  In the matter of sending out written material to your mailing list, would it not be well for you to give some thought to possibly a beautiful booklet and then a very fine readable article that they will all take pains to sit down and read at their homes?  I have in mind sending out such a booklet about a year from now, so that it will be fresh in their minds when you are ready to open.

Note what you say regarding the two additional stairways.  This does not surprise me, although I had hoped for the best.  However, I feel as you say, that you can find a way to work in these stairways without losing any rooms.

Yours very truly,

E. R. Graham.

Mr. John McE. Bowman,
    19 W. 30th St.,
        New York City.

Exhibit A-12

222

## Plaintiff's Exhibit 305.

Copy Letter Baumann to Schultze.

May 1, 1912.

My dear Mr. Schultz:

Your favor of yesterday received.  I am sorry to hear that you do not feel that there is enough money to permit the running of the conduits for the telautograph.  I think it would be a pity if we had to leave them out as they claim that within two (2) years, they will have an apparatus applicable to room use in hotels and they inform me that the McAlpin has put in the tubes for that purpose, surely, we do not want to take a back seat and I wish you would sharpen your pencil and try whether you cannot bring this expense within our limits.

When I see you the next time I will tell you what a former high official of the Western Union Co. and American Telephone Co. told me the day before yesterday on this subject.

Your previous letter regarding the drinking water in all the rooms we have discussed with you and Mr. Place thoroughly and I do not see why you bring the matter up again because Mr. Bowman and I told you that this instalation is one thing we shall insist upon.  We were so positive about needing it before signing the contract that we insisted to have it inserted in the contract.

Yours very truly,

223

## Plaintiff's Exhibit 306.

Copy Letter Baumann to Schultze.

May 3, 1912.

Mr. L. Schultze.
  c/o Messrs. Warren & Wetmore,
    70 E 45th St., City.

My dear Mr. Schultze:

Your letter of this date received.  I have asked your office when I was there the last time to give to Mr. Buzzini the lay out of the kitchen, but unless you do so you cannot expect him to lay out the plans.  He has certainly changed the kitchen lay out many times, on account of your changes the delays are caused and not by us.

If you will see that Mr. Buzzini gets the final plans of all the kitchens and pantries in which you will not make any more changes, I will see that you get the proper lay outs at once.

Yours very truly,

224

## Plaintiff's Exhibit 207.

Voucher of May 7, 1912, amount $6,936.72, for services of Associated Architects in connection with Merchants Loft Building, between 46th and 47th Streets, (voucher printed at page 1695 of record on appeal).

225

## Plaintiff's Exhibit 318.

COPY.

New York, N. Y.,
May twenty-ninth, 1912.

Messrs. Warren & Wetmore,
70 East 45th Street,
New York City.

Dear Sirs:

Mr. Allen H. Stem, as surviving member of the firm of Reed & Stem, who executed two contracts with you on February 8, 1904, and who on the same day joined with you in the execution of a contract with the New York Central and Hudson River Railroad has consulted with me from time to time since the death of the late Charles A. Reed with reference to his rights and duties in connection with the matters referred to and growing out of such contracts.

Mr. Stem is in the city at the present time and it has been suggested that an informal conference with you may be of benefit to all parties interested in the matters in question.

Will you kindly advise me when you can see Mr. Stem and me at such time and place as may be agreeable to you?

Mr. Stem is desirous of fulfilling such duties as fall to him by reason of his survival of Mr. Reed, and it is his wish, as well as mine, that, if possible, the matters in question should be adjusted properly and as expeditiously as possible.

Yours very truly,
Harold Swain.

Exhibit A-12

226

## Plaintiff's Exhibit 308.

Copy Letter Baumann to Graham.

June 8, 1912.

Mr. E. R. Graham,
   c/o D. H. Burnham & Co.,
     Railway Exchange Bldg.,
      Chicago, Ill.

My dear Mr. Graham:

Kindly wire me on receipt of this when you will be here. I have a supplementary agreement from the New York Central which Mr. Beakes is anxious to have signed before Mr. Newman goes away, but I told him today that I would not sign it until you had looked it over.

I understand from the architects office that the drawing and specifications will be ready on next Saturday and I hope you will be here in time to look them over before they go out.

Have you received the steel plans which will enable you to judge whether that alteration in the trusses can be made. It is very important that this matter be taken up before Mr. Newman sails next Saturday.

Yours very truly,

**Plaintiff's Exhibit 359.**

# THE NEW YORK CENTRAL & HUDSON RIVER RAILROAD COMPANY.

I, DWIGHT W. PARDEE, Secretary of The New York Central & Hudson River Railroad Company, HEREBY CERTIFY the following to be a correct extract from the minutes of the proceedings of the Executive Committee of the Board of Directors of said company at a meeting held at the General Office Building, Grand Central Terminal, in the City of New York, on Wednesday, the 10th day of July, 1912:

The President submitted proposed agreement, in triplicate, between this company, The New York, New Haven & Hartford Railroad Company and The Beau Site Company, modifying, in certain respects, the lease to the Beau Site Company, dated February 15th, 1912, covering the proposed Biltmore Hotel, and stated that the modifications related to certain changes in the description of the parcels excepted from said lease, approved by the Architects, an agreement as to the proportion of the cost of excavation to be charged to the hotel building and the inclusion of the vault rights in Madison Avenue and 44th Street in the cost of said hotel building, and a provision that in case of the termination of the vault right privileges the cost of the work of re-construction caused thereby should be added to the cost of the building in like manner as other structural changes required by notices of the municipal departments.

On motion,

RESOLVED: That the President and Secretary of this company be, and they hereby are, authorized to execute, in the name and under the seal of this company, said instrument.

D. W. PARDEE.

Exhibit A-12

228

**Plaintiff's Exhibit 367.**

THE BILTMORE.

Sept. 4, 1912.

Messrs. Warren & Wetmore,
70 E. 45th St., City.

Gentlemen:

Your favor of Sept. 3rd to hand. We have
not made any changes in the laundry outfit since
July, and have given you a copy of the blue-
prints like the one you sent me at that time.

I also remember that at the same time I
drew your attention to the dumb waiters from
the wine cellar at the 44th Street end which
then had no opening to the dumb waiters hall
in the wine cellar, and I hope has not been
forgotten by you.

Yours very truly,

GUSTAV BAUMAN.

1 enc.

229

## Plaintiff's Exhibit 309.

Copy Letter Baumann to Graham.

Sept. 16, 1912.

Mr. E. R. Graham,
  Railway Exchange Bldg.,
    Chicago, Ill.

My dear Mr. Graham:

From what I can find out from the plumber the brass pipes are specially recommended on account of corrosion, and it is claimed that hot water corrodes the iron pipes more quickly than cold water.

My former engineer claims that on the other hand the brass pipes are apt to split and his opinion is that the extra expense for brass pipes is not warranted. I think I have been told against his argument that they manufacture nowadays brass pipes that are not usually affected by expansion or contraction, and I think it is only a matter of expense why brass pipes are not generally used.

I saw this morning the De La Vergne refrigerator's man and he claims that his bid is sufficient to do all the work including the ice water to the private rooms. He suggests that in case we want to make a change that we should make three (3) compressors of 40 tons each; he says that the 75 ton was recommended by him on account of lack of space and economy in running, he says that the double compressor is a little more economical than two single ones.

Yours very truly,

Exhibit A-12

230

## Plaintiff's Exhibit 317.

STEM & FELLHEIMER
Associated Architects.

Seven East Forty-Second Street,
New York City.

Allen H. Stem,                    Successors to
A. Fellheimer,                    Reed & Stem.

New York, N. Y.,
October sixteenth, 1912.

Dear Sirs:

As you are doubtless aware, a statement has been prepared by the New York Central and Hudson River Railroad showing in summarized form the amounts claimed by the architects under the agreement of February 8, 1904, between the railroad and the various members of your firm and the late Charles A. Reed and myself, and also showing the amounts which the railroad concedes to be due, and also showing the amount of difference between the two statements. I have had some conversation with your Mr. Schultz with reference to the matter in question.

In view of the fact that the figures submitted by us to the railroad were made up largely from information furnished by you, Mr. Reed, the Executive Head, being then deceased, it is important that we should co-operate actively in regard to such future steps as should be taken in the way of accepting the railroad's figures, submitting a counter proposition to the Rail-

Exhibit A-12

road, or proceeding upon the basis of the figures already submitted by us.

Will you kindly let me know whom I may take the matter up with so that it may be pushed expeditiously.

In this connection may I call your attention to the fact that I am informed by Mr. Harold Swain, with whom I have consulted from time to time concerning my duties in connection with liquidating the affairs of the firm of Reed & Stem, that he has never received from you an answer to, or acknowledgment of, his letter to you of May 29th, 1912, of which I enclose a copy herewith.

It is important that we clearly understand the nature of our present relations in regard to the work which is now being prosecuted. I am advised that since the work which is now being done is work which was contemplated under the agreement of February 8, 1904, that my late partner's estate and I are still interested in the present work and that it will be your duty, as surviving parties to the agreement in question, to account in due course for the ultimate profits made from the work now being prosecuted.

I mention this at this time so that you may see the importance of now understanding our relations if possible, and also the importance of actively co-operating in connection with our claims for work completed prior to the time of Mr. Reed's death.

Very truly yours,

A. H. Stem.

Messrs. Warren & Wetmore,
    70 East Forty-fifth Street,
        New York City.

Exhibit A-12

232

## Plaintiff's Exhibit 37.

WARREN & WETMORE
GRAND CENTRAL TERMINAL ARCHITECTS
70 East 45th Street
New York.

Whitney Warren                    Telephone
Charles  D.  Wetmore          2902 Murray Hill

Cable Address
"Warmore"

October 17th, 1912.

Mr. Allen H. Stem,
  #7 East 42nd Street, City.

Dear  Sir:—

  In  answer  to  your  letter  of  the  17th  inst.,
would  say  that  it  is  agreeable  to  Mr. Wetmore
to  meet  you  at  this  office  tomorrow  at  eleven
o'clock.

Yours  truly,

WARREN AND WETMORE,
per LEONARD SCHULTZE

ESL/LMW.

## Plaintiff's Exhibit 316.

October  17,  1912.

Allen  H.  Stem,  Esq.,
   7  East  42nd  Street,
      New  York  City.

Dear  Sirs:

We beg to acknowledge receipt of your letter of October 16th enclosing copy letter from Mr. Harold Swain.

In regard to the claim of the Associated Firms against the New York Central & Hudson River Railroad Company, we would be glad to consult with you at any time that may be agreeable to you.

Referring to letter of Mr. Harold Swain to us dated May 29th beg to state that we never received the same; the first intimation that we had thereof is the copy enclosed in your letter.

As to the nature of our present relations, we beg to state that there are no present relations; that all our relations were terminated on the death of Mr. Reed and we would further state that you are not interested in the present work, and that it will not be our duty to account, in due course, or otherwise, for any profits whatsoever which may be made from the work now being prosecuted, or which may have heretofore been prosecuted.

We appreciate the importance of expediting the settlement with the Railway Company in the matter of the work of the Associated Firms, and further, a settlement between the Associated Firms of the contracts heretofore signed.

Very  truly,
Warren & Wetmore.

Exhibit A-12

234

## Plaintiff's Exhibit 31.

New York, N. Y.
October 21st, 1912.

Dear Sir:—

    We are in receipt of a statement from you regarding architect fees to January 1st, 1912, entitled ''Statement of differences to be adjusted,'' and showing totals as follows:

| Claimed by Architects | Railroad Company's Figures | Difference |
|---|---|---|
| $388,042 | $170,937 | $217,105 |

It is our understanding, derived from conversation with you since the statement was submitted, that this is exclusive of any questions possibly arising out of differences in group one and group two, as shown on Page 13, being summary to January 1st, 1912, in statement prepared under your direction and submitted to us several months ago.

You have suggested that if the architects were not willing to accept the Railroad's figures, as now set forth, the matter might properly be submitted to arbitration. Relative to this suggestion, seems to us that the difference beween us is so great that it seems likely that no settlement can be reached, unless than by arbitration or some more formal manner.

Unless the Railroad is disposed to make an early settlement at a figure substantially in accord with the figures, as submitted by us, we feel that we should proceed in accordance with the contract of February 8th, 1904, with the view of having the matter arbitrated.

Exhibit A-12

235

Kindly advise us of the Railroad's determination, so that we may proceed accordingly.

Yours very truly,

ALLEN H. STEM, surviving partner
of Reed & Stem,
WARREN & WETMORE.

Mr. G. W. KITTREDGE,
Chief Engineer,
N. Y. C. & H. R. R. R. Co.,
New York.

236

## Plaintiff's Exhibit 197.

NEW YORK CENTRAL & HUDSON R. R. CO.
Grand Central Terminal

George W. Kittredge,
    Chief Engineer,
        New York.

New York, November 20th, 1912.

Mr. A. H. Stem,
    7 East 42nd Street, New York City.

Messrs. Warren & Wetmore,
    70 East 45th Street, New York City.

Dear Sirs:—

With reference to the figures we made in the Grand Central Terminal Architects' office on Monday last which showed a total payment to January 1st, 1912 of $790,000:

I believed that it was understood that this included a voucher of $10,000.00 which was being held by the Auditor awaiting adjustment of the whole account. My attention is called to the fact that in May, 1912, we made a final payment to Messrs. Warren & Wetmore on the Merchants' Loft Building, amounting to $6,936.72, of which $6,742.00 had accrued prior to January 1st, 1912, and $194.72 which accrued subsequent to January 1st, 1912. Therefore the portion of the voucher which we are now making, and which will cover work prior to January 1st, 1912, will be...........................$200,571.00.

Yours very truly,

GEORGE W. KITTREDGE,
Chief Engineer.

237

## Plaintiff's Exhibit 29.

Voucher of November 21, 1912, amount $200,587.60 for services of Associated Architects to January 1, 1912, (voucher printed at page 1576 of the record on appeal).

238

**Letter, Kittredge to Rossiter, attached
to voucher of November 21, 1912,
(Plaintiff's Exhibit 29).**

NEW YORK CENTRAL & HUDSON RIVER
R. R. CO.

New York, Nov. 22, 1912.

Mr. E. L. Rossiter,
Treasurer.

Dear Sir:—

I return herewith voucher No. 63531 in favor
of Messrs. Reed & Stem and Warren & Wetmore,
dated November 8th, 1911, for 89th Estimate
for professional services in making plans, &c.,
for the Grand Central Terminal, in amount $10,-
000.00. We have today arrived at a settlement
with Messrs. Reed & Stem and Warren & Wet-
more, for services to January 1st, 1912, under
the contract dated February 8th, 1904, and a
voucher has been prepared to cover same in
amount $200,587.60. This settlement includes
the payment of the attached voucher No. 63531
as it is included in the amount deducted for pre-
vious payments on the voucher for $200,587.60,
and should be paid in connection therewith.
Judge Emery advises, however, that the at-
tached voucher should be receipted by Mr. Allen
H. Stem and Mr. Alfred Fellheimer, survivors
of Reed & Stem and by Warren & Wetmore.

Yours truly,

Geo. W. Kittredge,
Chief Engineer.

Exhibit A-12

239

**Plaintiff's Exhibit 366.**

D. H. BURNHAM & COMPANY,
ARCHITECTS,
Railway Exchange, Chicago.

ERG'                          26th November, 1912.

BILTMORE HOTEL.

Warren & Wetmore,
    New York City.

Gentlemen:

Replying to your favor of the 22nd instant, I herewith return with my signature two copies of change No. 8 on the Biltmore Hotel covering increase in height of the wainscot in Bath Room from 3′ 8″ to 4′ 8″, at an additional cost of $10,882.61.

Very truly yours,

E. R. Graham.

Encl. 2379.

Exhibit A-12

**Letter, Kittredge to Rossiter, attached to voucher of November 21, 1912, (Plaintiff's Exhibit 29).**

New York, Nov. 26, 1912.

Mr. E. L. Rossiter,
        Treasurer.

Dear Sir:—

I am sending you today through Mr. Foulds, voucher in favor of Allen H. Stem and Alfred Fellheimer, Survivors of the Firm of Reed & Stem and Warren & Wetmore for the 100th Estimate to January 1, 1912, for professional services rendered in preparing plans, specifications and supervising construction, in amount $200,587.60. In addition to the receipt at the bottom of the voucher to be signed by Allen H. Stem and Alfred Fellheimer and Warren & Wetmore, I attach an agreement prepared by our Legal Dept. which is to be signed by Mr. Whitney Warren, Mr. Charles D. Wetmore, Mr. Lloyd Warren and Mr. John E. Howe, composing the firm of Warren & Wetmore. This agreement is to be signed at the same time the voucher is receipted and before the money is actually paid.

Yours  truly,

C.A.            (Signed)   Geo. W. Kittredge,
C.E.                          Chief  Engineer.

Mr. E. L. Rossiter:

For your information. Original copy of letter has accompanied the voucher and agreement mentioned. When the agreement with Warren & Wetmore has been signed, will you please return it to me.

G. W. KITTREDGE.

Exhibit A-12

241

**Plaintiff's Exhibit 196.**

WARREN & WETMORE
Grand Central Terminal Architects
70 East 45th Street
New York

Whitney Warren
Charles D. Wetmore

Nov. 29th, 1912.

Mr. Harold Swain,
  176 Broadway, N. Y. City.

Dear Sir:—

As requested by you at meeting held in
this office to-day we are sending you herewith copy
of statement attached to the voucher which has
been made out by the Railroad Company in favor
of Reed & Stem—Warren & Wetmore.

This is for your personal information.

Yours truly,

WARREN & WETMORE,

LEONARD SCHULTZE.

LS/L

Exhibit A-12

**Plaintiff's Exhibit 243.**

Harold Swain,
> Attorney & Counsellor at Law,
>> 176 Broadway,
>>> New York,

>>>> December 2, 1912.

Messrs. Warren & Wetmore,
> 70 East 45th Street,
>> New York City.

Dear Sirs:

I am in receipt of your favor of November 29th, enclosing copy of statement attached to the voucher which has been made out by the Railroad Company. An examination of this statement confirms me in the opinion which I expressed last Friday that the execution of this by you should not be objected to, it seems to me, for the reason that the contract of December 19, 1911, executed between the Railroad Company and you, seems to fully provide that all payments which are made in settlement of the prior contract are to be deducted from the total compensation provided for in the later contract. Under these circumstances it would seem that any payment which is now made by the railroad in settlement under the 1904 contract must necessarily be governed by the provisions of the later contract.

I think I made it plain to you at the meeting last Friday that, briefly stated, Mr. Stem's position is that, while he has never questioned the right of the railroad to cancel the agreement with it of February 8, 1904, he feels that the relations created by the agreement between you and Reed & Stem of the same date, together