243

with the subsequent relations between the parties, preclude you from entering into, for your exclusive benefit, an agreement covering the same subject matter, and upon substantially the same terms, for the continuation of the work contemplated in the earlier agreements. This being his position, he will in due course seek from you an accounting of your profits in connection with the prosecution of the work contemplated by the original agreement with the Railroad Company. As I stated to you on Friday, Mr. Stem stands willing to assume the obligations created by the agreement between Reed & Stem and you of February 8, 1904, in connection with the work being done since January 1, 1912, and will be ready at all times to devote his labor and talents to the work in question, as provided in the agreements of February 8, 1904.

It has seemed to me, as I stated to you recently, that the fact that this claim is being made should not interfere with the present collection of the amount which the railroad is now ready to pay in settlement of the contract of February 8, 1904, because whatever may be the mutual relations of the respective architects, it has been generally conceded by all parties that the settlement which has been arrived at with the railroad, is a fair one under all the circumstances. It developed at the meeting of last week that Mr. Stem and Mr. Wetmore were so far apart on the application and effect of what may be called the arbitration agreement of February 8, 1904, relating to the one-half of one per cent., as to which there is a question, that no early adjustment seemed likely. Under these circumstances Mr. Stem feels that if possible,

Exhibit A-13

244

steps should be taken to collect the amount which the railroad is now willing to pay, and invest it in such form that a proper income may be yielded, and he is ready to enter into any reasonable arrangement by which the money can be collected and invested without prejudice to the rights of the parties, which can be adjusted later. In this connection, I should be pleased to know whether it is your idea that the arbitration provided for by what I have called the arbitration agreement of February 8, 1904, may be had in advance of the actual receipt by the associated architects of the amount which is the subject matter of the arbitration.

In view of the fact that, from the situation as it developed at our last meeting, it did not seem likely that any early settlement might be had of the matters in question between you and Mr. Stem, Mr. Stem has been called back to St. Paul by important business there. In leaving, however, he stated to me that he would arrange to return here as soon as there was any reasonable likelihood of making substantial progress in the adjustment which is now under discussion.

Very truly yours,

HAROLD SWAIN.

Exhibit A-13

245

**Plaintiff's Exhibit 348.**

Telephone 5890 Bryant
Cable Warmore

Warren & Wetmore
Architects
16 East 47th Street
New York

Whitney Warren
Charles D. Wetmore

December 4, 1912.

Mr. Harold Swain,
    176 Broadway, City.

Dear Sir:

We beg to acknowledge receipt of your letter of December 2nd with reference to matters of proposed settlement with the Railway Co. and also in relation to Mr. Stem's position. In reply we beg to reiterate the position taken by Mr. Wetmore at our last meeting, to wit, that, in view of the position taken by Mr. Stem, we think it advisable that the entire matter should be settled agreeably to both parties before any vouchers are signed for amounts held by the Railway Company.

As to Mr. Stem's position as outlined in your letter, we have no comments to make, except to reiterate the position taken by Mr. Wetmore, namely, that there are no relations existing between Mr. Stem and ourselves from the date of Mr. Reed's death.

Very truly,
WARREN & WETMORE.

HLG/HHC

Exhibit A-13

246

## Plaintiff's Exhibit 360.

## THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY

I, DWIGHT W. PARDEE, Secretary of The New York Central and Hudson River Railroad Company, HEREBY CERTIFY the following to be a correct transcript from the minutes of the proceedings of the Board of Directors of said company at a meeting held at the General Office Building, Grand Central Terminal, in the City of New York on Monday, December 23rd, 1912:

The President presented the following Budget of Improvements and Additions proposed and recommended to be made during the year 1913, showing:—

| | |
|---|---|
| Work heretofore authorized and in progress | $29,896,603. |
| New work not heretofore authorized | 12,245,400. |
| Completion of Hotel Biltmore, United Cigar Stores Building, Y. M. C. A. Building and Adams Express Building | 5,461,300. |
| Total | $47,603,303. |

He stated that of the total work recommended, approximately $5,069,789. is chargeable to Individuals and Companies; $4,960,743. to Expenses and $37,572,771. to Capital or Income.

### (TAKE IN BUDGET)

After due consideration, and on motion, the following was presented and adopted:

217

RESOLVED: That the President be, and he is hereby, authorized to continue the work heretofore authorized, amounting to $29,896,603., and to make contracts for new construction work amounting to $12,245,400., and to complete work on the Hotel Biltmore, United Cigar Stores Building, Y. M. C. A. Building, and Adams Express Building, amounting to $5,461,300.,—with the understanding that the amount to be expended during 1913, chargeable to Capital or Income, shall not exceed $30,000,000.

D. W. PARDEE.

PRES. BROWN,
V-P VANDERBILT,
V-P CARSTENSEN,
V-P SMITH,
TREAS. ROSSITER.

Exhibit A-13

248

**Plaintiff's Exhibit 355.**

New York, N. Y.,
February eighteenth,
1913.

Gentlemen :—

Some days ago I called at the office of
the Architects of the Grand Central Station, for
the purpose of looking at the plans of the Hotel
Biltmore now under construction on the east side
of Madison Avenue between Forty-third and
Forty-fourth Streets.

I was then told by Mr. Schultze, who was in
charge of the office, that he could not allow me to
see these plans without the direct authority of a
member of your firm.

It is my wish to see the plans of this building
including the preliminary plans which were pre-
pared prior to January first, 1912 by the Archi-
tects for the Grand Central Station, which Archi-
tects are referred to in the agreement between
yourselves and Reed & Stem, dated February
eight 1904.

Will you please advise me that you have given
directions that I may have access to these plans
for the purpose of examining same.

Yours truly,

H. S.-X                                    A. H. STEM.
Warren & Wetmore,
70 East 45th St.,
New York City.

Exhibit A-13

## Plaintiff's Exhibit 228.

NEW YORK
CENTRAL
LINES

### NEW YORK CENTRAL & HUDSON RIVER R. R. CO.

New York, Feb. 21, 1913.

### ADVICE NO. 19.

Messrs. Warren & Wetmore,
  70 East 45th Street,
    New York City.

Gentlemen:

Advice No. 3 dated March 11, 1912, is hereby supplemented and modified to read as follows:

In accordance with the Agreement dated December 19, 1911, between the New York Central & Hudson River Railroad Company and your firm, you are hereby designated in writing to act as Architects and proceed with the work of preparing preliminary plans, working plans and specifications and supervising the construction of a hotel building to be erected in the block between Madison & Vanderbilt Avenues, 43rd & 44th Streets, New York City. The work is to be done in accordance with said agreement except that the total percentage to be paid you by the Railroad Company for preliminary plans, working plans and specifications and supervision is to be 5% of the final cost, which final cost is to include the sum of ninety-four thousand three hundred

Exhibit A-13

250

and eighty-eight (94,388) Dollars, being the portion of the cost of the excavation for the foundations and supports of the building to be constructed upon the parcel of land above described, which is chargeable to the hotel building, plus such additional sum as will equal the cost of the necessary temporary sidewalks and supports, sheet piling, bracing and fences along the adjacent streets required during the construction of the hotel building and except that from the above mentioned 5% is to be deducted twenty-five thousand (25,000) Dollars, to be paid by the Railroad Company to Mr. E. R. Graham, Consulting Architect.

Yours truly,

GEO. W. KITTREDGE,<br>Chief Engineer.

Approved:
  W. C. BROWN,
    President.

The above outlined arrangement is satisfactory and accepted by us.

   By Leonard Schultze,
WARREN & WETMORE,

251

## Plaintiff's Exhibit 323.

July 3, 1913.

Gerald Hull Gray, Esq.,
  34 Pine Street,
    New York City.

Dear Mr. Gray:—

    I learned from you yesterday over the telephone that Warren & Wetmore had signed the receipts required by the New York Central & Hudson River Railroad, in connection with the warrant for $200,587.60 which the Railroad has been ready to pay since November 21, 1912 and that Warren and Wetmore are now willing that this warrant should be deposited in the bank account of the Associated Architects to their credit.

    The information which I received from you yesterday over the telephone was the first information that I have had that the warrant had been signed or that Warren and Wetmore were willing to cooperate in making this deposit.

    In accordance with my statement to you of yesterday over the telephone, I have telegraphed to Mr. Stem, asking him to come to New York not later than the first of next week, so that he may sign the warrant and cooperate in making the suggested deposit.

    Yours very truly,

      HAROLD SWAIN.

Exhibit A-13

252

**Plaintiff's Exhibit 347.**

## NEW YORK CENTRAL & HUDSON RIVER R. R. CO.

ACCOUNTING DEPARTMENT.

Office of Auditor.

GRAND CENTRAL TERMINAL.

New York, July 8, 1913.

Reed & Stem.

Dear Sir:

Your attention is invited to the following statement of bills rendered against your company on the dates indicated, which our books show as still unpaid.

If there are any objections to the bills as rendered, please advise promptly and fully, in order that I may investigate and, if necessary, adjust for settlement.

In the absence of any objections to the bills as rendered, please remit in New York Funds to Mr. E. L. Rossiter, Treasurer, New York.

Yours truly,

C. H. CHAMBERS,
Auditor.

253

| Date | Rendered | Nature of Bill | Period | Bill No. | Amount |
|---|---|---|---|---|---|
| 1911 | | | | | |
| Nov. | 4 | Rent | Nov. | 34948 | 500.00 |
| | 22 | Testing cement | Sept. | 37743 * | 58.40 |
| Dec. | 9 | Rent | Dec. | 39236 * | 500.00 |
| | 15 | Testing cement | Oct. | 40476 * | 44.55 |
| 1912 | | | | | |
| Jan. | 10 | "        " | Nov. | 43825 * | 55.30 |
| Feb. | 16 | "        " | Dec. | 3059 * | 45.75 |
| | 5 | Insp. steel | " | 1807 | 1,800.69 |
| Mch. | 15 | "    " | Oct. Nov. Dec. | 6304 | 1,582.20 |
| | | | | | 4,586.89 |
| | | Warren & Wetmore | | | |
| 1912 | | | | | |
| Feb. | 16 | Fitting up office | Feb. 1911 | 3060 | 2,767.47 |
| | | | | | 7,354.36 |

ms marked  *  under correspondence

Received payment
N. Y. C. & H. R. R. R. Co.
July 8, 1913.
A. M. Elliman
Cashier
G. H. H.

254

## AGREEMENT of July 22, 1913, attached to voucher of November 21, 1912 (Plaintiff's Exhibit 29).

KNOW ALL MEN BY THESE PRESENTS that we, the undersigned, WARREN & WETMORE, a co-partnership composed of Whitney Warren, Charles D. Wetmore, Lloyd Warren and John E. Howe, for and in consideration of Two Hundred Thousand, Five Hundred and Eighty-seven and 60/100 ($200,587.60) Dollars, the total shown upon a voucher dated November 21, 1912, in favor of "Allen H. Stem and Alfred Fellheimer, survivors of the firm of Reed & Stem and Warren & Wetmore, Associated Architects for G. C. Terminal, Grand Central Terminal, New York City", a copy of which is hereto attached, and receipt of which is hereby acknowledged, covenant and agree that all items in said voucher for architectural services rendered in connection with structures not completed on January 1, 1912, or for services rendered in connection with structures that may subsequent to January 1, 1912, be erected, are governed by paragraph "Third" of the contract dated December 19, 1911, between THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY and the undersigned WARREN & WETMORE, and that in future constructions credit is to be given to the said Railroad Company for such payments pursuant to the provisions of said contract. Nothing contained herein is to be construed on the part of the said WARREN & WETMORE as an admission of payment to them for architectural services wholly rendered from January 1, 1912, to the date hereof.

Exhibit A-13

255

IN WITNESS WHEREOF we have hereunto set our hands and seals this 8th day of July, 1913.

WARREN & WETMORE

WHITNEY WARREN
    July 22, 1913.        By Gerald Hull Gray,
                                 Attorney at Law.

256

**Plaintiff's Exhibit 431.**

WARREN and WETMORE,

Grand Central Terminal Architects,
70 East 45th Street,
New York.

July 25, 1913.

CHANGES 21 & 22

BILTMORE HOTEL:

Mr. E. R. Graham,
   Consulting Engineer,
      Railway Exchange Bldg.,
         Chicago, Ill.

Dear Sir:

  We are sending you herewith three (3) copies of our list of changes on the Biltmore Hotel (Nos. 21 and 22).

  Will you please sign and return two copies of each and retain one copy for your file.

Yours truly,

WARREN & WETMORE,

per C. G. Munsell.

CGM/T.
Enc.
(Copy to Mr. Morse)

Exhibit A-13

257

## Plaintiff's Exhibit 320.

Harold Swain,
    Attorney & Counsellor at Law,
       176 Broadway, New York.

            August 22, 1913.

Messrs. Warren & Wetmore,
    16 East 47th Street,
       New York City.
Dear Sirs:

You have probably been informed before this that the arbitrators in the Reed & Stem—Warren & Wetmore arbitration matter have made an award in which they decide that the one-half of 1% which is the subject matter of the arbitration amounts to $53,000, of which they award $25,000 to you and $28,000 to Reed & Stem.

In view of the fact that this one of the controverted matters between you and Mr. Stem, as surviving member of the firm, has been thus disposed of, it would seem as if a partial distribution of the funds now on deposit to the credit of the associated firms, or their respective representatives, might be made to advantage. If this cannot be done pursuant to agreement between the parties, then it would seem that some arrangement should be made by which the moneys now on deposit could be invested to better advantage than at present. I notified Mr. Gassin, who attended on behalf of your firm at the time of the collection of the $203,233.24 from the Railroad, and your

Exhibit A-13

258

attorney Mr. Gray, who was also present, that a deposit could be made with the Title Guarantee & Trust Company which would bring in a 3% return instead of 2%, which is now agreed to be paid by the present depositary. If the money were prudently and conservatively invested in some form of mortgage security it would seem that at least 4% could be readily procured. Mr. Stem is ready to join in any reasonable arrangement whereby the funds now on deposit can be conservatively invested to the best advantage. Moreover, he naturally feels that if you fail to co-operate with him to this end, you should be eventually charged with such loss of interest as may be incurred.

In connection with the arbitration, Mr. Stem has been presented with bills of the arbitrators for fees and expenses as follows:

|  |  |  |
|---|---|---|
| Charles S. Frost, |  |  |
|  | Fee, | $3,000.00 |
|  | Expenses, | 177.00 |
| Henry Hornbostel, |  |  |
|  | Fee, | 3,000.00 |
|  | Expenses, | 60.00 |
| Austin W. Lord, |  |  |
|  | Fee, | 3,000.00 |
|  | Expenses, | 33.00 |
| Total |  | $9,270.00 |

In addition to this, I have received a bill from the Shorthand Reporting Company, of 55 Liberty Street, amounting to $646 for 1292 folios, five copies, at ten cents per folio.

Exhibit A-13

259

I should like to have your views as to whether there is any objection on your part to the payment of any of these items, and if not, it would seem that they might properly be paid from the funds now on deposit.

I take the liberty of writing to you directly in regard to these matters because, while Mr. Gray appeared for you in certain litigation now pending between you and Mr. Stem, he does not, so far as I know, represent you in the arbitration matter. I am sending to him, however, a copy of this letter.

Kindly let me hear from you at your early convenience.

Very truly yours,

HAROLD SWAIN.

Exhibit A-13

260

**Plaintiff's Exhibit 321.**

August 22, 1913.

Gerald Hull Gray, Esq.,
    34 Pine Street,
        New York City.

Dear Mr. Gray:—

I enclose herewith a copy of a letter which I am today writing to Messrs. Warren & Wetmore.

Very truly yours,

HAROLD SWAIN.

Enclosed with the foregoing letter was a copy of letter Swain to Warren & Wetmore of August 22, 1913, Plaintiff's Exhibit 320.

## Plaintiff's Exhibit 361.

# THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

I, DWIGHT W. PARDEE, Secretary of The New York Central and Hudson River Railroad Company—HEREBY CERTIFY the following to be a correct transcript from the minutes of the proceedings of the Board of Directors of said company at a meeting held at the General Office Building, Grand Central Terminal, in the City of New York, on Wednesday, February 11th, 1914:

Mr. Newman stated that the amounts furnished by this Company and by The New York, New Haven and Hartford Railroad Company toward the construction of the United Cigar Stores Company building, Vanderbilt Avenue, 42nd and 43rd Streets, amounted to approximately $297,500, and that one of the provisions of the lease of this building to the United Cigar Stores Company, dated July 30, 1912, provides for the reimbursement of this cost by the payment by the lessee in each year, semi-annually, of a sum equal to two (2) per cent per annum on the cost of the building until such payments, with interest at four (4) per cent compounded semi-annually shall equal the entire expenditure.

The Biltmore Hotel, Madison and Vanderbilt Avenues, 43rd and 44th Streets, cost approximately $5,550,000, one-half thereof being furnished by this company and the other half by the New York, New Haven and Hartford Railroad Company.

One of the provisions of the agreement with the New York, New Haven and Hartford Railroad

Company, dated February 15, 1912, with respect to this building, provides that the rental, seven (7) per cent per annum, shall be equally divided between this company and the New York, New Haven and Hartford Railroad Company until such time as two (2) per cent per annum on the cost of the building with interest at four (4) per cent compounded annually, shall equal the entire expenditure; and recommended that a separate account be kept of this company's share of the rentals and other income (other than ground rental) received from the United Cigar Stores Building on Vanderbilt Avenue, 42nd and 43rd Streets, and the Hotel Biltmore, Madison and Vanderbilt Avenues, 43rd and 44th Streets; and that from such rentals and other income there shall be deducted in each year a sum equal to two (2) per cent of this company's proportion of the cost of each of these buildings respectively; and the sum so deducted and all interest thereon and all income received from the investment thereof, shall be credited to the "Grand Central Terminal Sinking Fund," established by action of the Board of Directors at a meeting held Tuesday, February 11, 1913, until said sum so deducted, with all income received from the investment thereof, shall, in respect of each of these buildings, equal the sum expended by this company in their construction.

That the Auditor and Treasurer shall include in their annual reports as of December 31st each year, to the Board all transactions had in accordance with the foregoing for the previous year.

It is suggested, however, that in any action taken by the Board it be expressly stated as a part of the minutes that such action is taken by the Board in accordance with its judgment and discretion at the present time and not because of any

203

contract or other obligation so to do; and with the understanding that the Board may at any time sell any interest-bearing securities purchased in accordance with this action and devote the proceeds to capital expenditures or may at any time alter or modify the plan or policy here outlined to conform to any other or new plan for financing the improvements herein specified or any other improvements in the Grand Central Terminal.

After a thorough consideration of the subject, and on motion, the recommendations were approved; and it was

RESOLVED That two (2) per cent per annum and also the interest thereon and all income received from the investment thereof, on the cost of the two buildings above described, shall be credited to the "Grand Central Terminal Sinking Fund," and invested in accordance with the action of this Board at a meeting held Tuesday, February 11, 1913.

D. W. PARDEE,
Secty.

President Smith
Vice-Pres. Vanderbilt
Vice-Pres. Carstensen
Vice-Pres. Place
Treas. Rossiter

264

**Plaintiff's Exhibit 362.**

## THE NEW YORK CENTRAL RAILROAD COMPANY.

I, E. F. STEPHENSON, Asst. Secretary of The New York Central Railroad Company, HEREBY CERTIFY the following to be a correct transcript from the minutes of the proceedings of the Board of Directors of said company at a meeting held at the General Office Building, Grand Central Terminal, in the City of New York on Wednesday, September 15th, 1915:

The President stated that:

It is proposed that this company and the New Haven Company lease to the Beau Site Company (lessee of the Biltmore Hotel) a space out of the Incoming Station as now constructed about 73 feet by 90 feet 8 inches, above a plane which it has been concluded is the proper height of the ceiling of the Incoming Station, for a term which will end with the expiration of the first 21-year term of the Biltmore Hotel, with provisions for renewals in case of renewals of the Biltmore lease as heretofore provided. The rent is to be $12,500 per annum for the first five years, and $15,000 per annum for the remainder of the term, rental to commence upon the completion of the work of fitting the space for hotel purposes. It is estimated that it will require from six to eight months to complete this work, and the cost is estimated to be approximately $100,000. It is thought that the most appropriate way of providing this money is for the

Exhibit A-13

265

New Haven Company and the Central Company each to furnish one-half, and then out of the rentals each to receive 6% and 2% as sinking fund until the whole amount so advanced is paid back. This has been suggested to the New Haven Company but no reply has yet been received. If that company decides that it cannot furnish $50,000, the other way of doing it is for the Central Company to furnish the money and to add it to the capital cost of the Terminal. There is not a very great difference in the financial result to the Central Company between these two methods.

Upon motion, it was

RESOLVED: That the President, or the proper officer of this company, be authorized to conclude the negotiations outlined above with the Beau Site Company and with the New Haven Company, and that when concluded, the President or any Vice-President of this company be, and they are hereby, authorized to execute, under the corporate seal of the company, the appropriate lease and building agreement with The Beau Site Company and an appropriate agreement with the New Haven Company upon either of the plans above outlined.

E. F. STEPHENSON.

Pres. Smith,
Vice-Pres. Vanderbilt,
Vice-Pres. Carstensen,
Vice-Pres. Place,
Vice-Pres. Hardin,
Treas. Rossiter.

266

## Plaintiff's Exhibit 373.

## THE LINCOLN NATIONAL BANK
Of the City of New York

42nd Street Opposite Grand Central Terminal

New York, March 23rd, 1916.

Harold Swain, Esq.,
   176 Broadway,
      New York City.

Dear Sir:—

     In response to your request, we beg to state that the following balances are now on deposit with us:

|  | Balance |
|---|---|
| Chas. A. Reed, Treasurer, Reed & Stem, Warren & Wetmore, Architects in charge of work Grand Central Terminal, Opened Mar. 10, 1904, | $41,032.46 |
| Reed & Stem Warren & Wetmore, Opened Jan. 26, 1912, | 4,496.61 |
| Allen H. Stem, Surviving Partner Reed & Stem, Warren & Wetmore, Opened July 8, 1913, | 203,861.66 |

These accounts according to the terms of the deposit have been and are now drawing interest at the rate of 2%

      Very truly yours,
         DAVID C. GRANT,

GET

           Cashier.

Exhibit A-13