UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                              :
YANN GERON, as Chapter 7 Trustee of           :     11 Civ. 8967
Thelen LLP,                                   :
                                              :
                 Plaintiff,                   :     MEMORANDUM & ORDER
                                              :
             -against-                        :     ┌─────────────────────────────┐
                                              :     │ USDC SDNY                   │
ROBINSON & COLE LLP, et al.,                  :     │ DOCUMENT                    │
                                              :     │ ELECTRONICALLY FILED        │
                 Defendants.                  :     │ DOC #:_____         │
                                              :     │ DATE FILED:  9/4/12         │
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X     └─────────────────────────────┘
                                              :
YANN GERON, as Chapter 7 Trustee of           :     12 Civ. 1364
Thelen LLP,                                   :
                                              :
                 Plaintiff,                   :
                                              :
             -against-                        :
                                              :
SEYFARTH SHAW LLP, et al.,                     :
                                              :
                 Defendants.                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

   These actions arise from an alarming phenomenon—the bankruptcy of a major

law firm. The pursuit of pending hourly fee matters as assets of the estate has become a

recurring feature of such bankruptcies. But this concept of law firm "property" collides with the

essence of the attorney-client relationship. That relationship springs from agency law, not

property law. The client is the principal, the attorney is the agent, and the relationship is

terminable at will. The question presented is whether a dissolved law firm's pending hourly fee

matters are nevertheless its property.

-1-

Plaintiff Yann Geron (the "Trustee"), the Chapter 7 trustee of the bankruptcy estate of former law firm Thelen LLP ("Thelen"), brings fraudulent transfer and accounting and turnover claims against Defendants Seyfarth Shaw LLP ("Seyfarth Shaw") and Robinson & Cole LLP ("Robinson & Cole"). Through these claims, the Trustee seeks to recover profits from work that former Thelen partners performed after they joined those two law firms. Seyfarth Shaw moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), and Robinson & Cole moves to dismiss all claims against it under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Seyfarth Shaw's motion is granted in its entirety and Robinson & Cole's motion is denied. Further, this Court sua sponte certifies this order for interlocutory appeal.

BACKGROUND

Until its dissolution in late 2008, Thelen was a registered limited liability partnership governed by California law. (Voluntary Petition ("Pet.") at 1, In re Thelen LLP, Case No. 09-15631 (Bankr. S.D.N.Y.).) On October 28, 2008—in the midst of the global financial crisis—Thelen's partners voted to dissolve the firm. (Complaint against Robinson & Cole and Partner Does, dated Sept. 14, 2011 ("RC Compl.") ¶ 20; Complaint against Seyfarth Shaw and Partner Does, dated Sept. 14, 2011 ("SS Compl.") ¶ 20.) At the same time, Thelen's partners adopted the Fourth Amended and Restated Limited Liability Partnership Agreement (the "Fourth Partnership Agreement"), which was also governed by California law. (RC Compl. ¶ 20; SS Compl. ¶ 20.) In connection with the Fourth Partnership Agreement, Thelen's partners voted to wind up Thelen's business under a written Plan of Dissolution. (RC Compl. ¶ 21; SS

-2-

Compl. ¶ 21.)  At the time of its dissolution, Thelen was insolvent.  (RC Compl. ¶¶ 23, 28-29; SS

Compl. ¶¶ 23, 28-29.)

        Unlike Thelen's previous partnership agreements, the Fourth Partnership

Agreement incorporated a so-called Jewel Waiver.  (RC Compl. ¶ 34; SS Compl. ¶ 34.)

Specifically, it provides:

> Neither the Partners nor the Partnership shall have any claim or
> entitlement to clients, cases or matters ongoing at the time of dissolution
> of the Partnership other than the entitlement for collection of amounts due
> for work performed by the Partners and other Partnership personnel prior
> to their departure from the Partnership.  The provisions of this [section]
> are intended to expressly waive, opt out of and be in lieu of any rights any
> Partner or the Partnership may have to "unfinished business" of the
> Partnership, as the term is defined in Jewel v. Boxer, 156 Cal. App. 3d 171
> (Cal. App. 1 Dist. 1984), or as otherwise might be provided in the absence
> of this provision through the interpretation or application of the [California
> Uniform Partnership Act of 1994, as amended].

(RC Compl. ¶ 34; SS Compl. ¶ 34.)

        On September 18, 2009, Thelen filed a voluntary petition for relief under Chapter

7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of

New York.  At that time, Thelen indicated that it "has been domiciled or has had a residence,

principal place of business, or principal assets" in the Southern District of New York.  (Pet. at 2.)

After the Trustee was appointed, he instituted adversary proceedings against Seyfarth Shaw,

Robinson & Cole, and several former Thelen partners.  The Trustee contends that Thelen's

adoption of the Jewel Waiver in its Fourth Partnership Agreement constituted a fraudulent

transfer by Thelen.  The Trustee now seeks to avoid the fraudulent transfer of Thelen's

unfinished business, recover its value, and require Defendants to account for and turn over the

profits generated from that work.

DISCUSSION

I.    Legal Standard

        Courts evaluate motions for judgment on the pleadings under the same standard as

motions to dismiss for failure to state a claim. See Bank of N.Y. v. First Millennium, Inc., 607

F.3d 905, 922 (2d Cir. 2010). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, 'to 'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007)). To determine plausibility, courts follow a "two-pronged approach." Iqbal, 556

U.S. at 679. "First, although 'a court must accept as true all of the allegations contained in a

complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Harris

v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (alteration in original) (quoting Iqbal, 556 U.S. at 678).

Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true,

'plausibly give rise to an entitlement to relief.'"  Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir.

2010) (quoting Iqbal, 556 U.S. at 679). A court's "consideration [on a motion to dismiss] is

limited to facts stated on the face of the complaint, in documents appended to the complaint or

incorporated in the complaint by reference, and to matters of which judicial notice may be

taken."  Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

II.    Choice of Law

        To prevail on its claims against Seyfarth Shaw, the Trustee must demonstrate that

Thelen had an interest in "property." See 11 U.S.C. §§ 542, 544, 548, 550; see also Cal. Civ.

Code §§ 3439.04-3439.07. According to the Trustee, Thelen's partners transferred "property" to

-4-

Seyfarth Shaw and Robinson & Cole when they executed the Jewel Waiver.  The parties agree

that California law defines any "property interest" that Robinson & Cole received.[1]  However,

the Trustee and Seyfarth Shaw dispute whether California law or New York law defines any

"property interest" received by Seyfarth Shaw.

As a preliminary matter, this Court rejects the Trustee's contention that California

law applies because Thelen's Fourth Partnership Agreement contained a choice-of-law provision

to that effect.  Because Seyfarth Shaw was not a party to the Fourth Partnership Agreement, it

cannot be bound by that agreement.  See Int'l Customs Assocs., Inc. v. Ford Motor Co., 893 F.

Supp. 1251, 1255 (S.D.N.Y. 1995) (citing Abraham Zion Corp. v. Lebow, 761 F.2d 93, 103 (2d

Cir. 1985)).  Further, "a contractual choice-of-law-provision governs only a cause of action

sounding in contract, not one sounding in tort[.]"  Drenis v. Haligiannis, 452 F. Supp. 2d 418,

425-26 (S.D.N.Y. 2006).  Fraudulent transfer claims sound in tort.  See Drenis, 425 F. Supp. 2d

at 418.  Accordingly, Seyfarth Shaw is not bound by the agreement's choice-of-law provision.

In the absence of a binding contractual choice-of-law provision, this Court applies

the choice-of-law rules of New York to determine which state's law governs the purported

property interest at issue.  See In re Gaston & Snow, 243 F.3d 599, 600-01, 607 (2d Cir. 2001).

Thus, this Court first examines whether an actual conflict exists between the laws of the

jurisdiction involved.  See Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC, 842 F. Supp. 2d

661, 665 (S.D.N.Y. 2012).  If there is such a conflict, this Court conducts an "interest analysis,"

---

[1]  Robinson & Cole is based in Connecticut, (RC Compl. ¶ 4), but the parties do not contend that
Connecticut law governs the "property interest" at issue.  Because the parties agree that
California law applies and they did not brief applicable Connecticut law, this Court declines to
consider whether Connecticut law applies.  See Julio & Sons Co. v. Travelers Cas. & Sur. Co. of
Am., 591 F. Supp. 2d 651, 656 n.3 (S.D.N.Y. 2008).

and applies the "law of the jurisdiction having the greatest interest in the litigation[.]" Istim, Inc. v. Chemical Bank, 78 N.Y.2d 342, 347 (1991) (quoting Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d 189, 197 (1985)) (internal quotation marks omitted).

For the reasons described below, the existence and scope of a dissolved law firm's property interest in pending hourly fee matters vary under New York and California law. This Court therefore examines the competing interests of New York and California in this action. In ascertaining the state with the greatest interest, this Court undertakes a two-pronged inquiry, determining "(1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the law [at issue] is to regulate conduct or allocate loss." Padula v. Lilarn Props. Corp., 84 N.Y.2d 519, 521 (1994) (citation omitted).

Here, the majority of the significant contacts occurred in New York. The Trustee does not dispute that the majority of the former Thelen partners who moved to Seyfarth Shaw are licensed to practice law in New York. Moreover, Thelen filed its Chapter 7 petition in the Southern District of New York, indicating that it "has been domiciled or has had a residence, principal place of business, or principal assets" in the Southern District of New York. (Pet. at 2.) In view of these contacts, Thelen's status as a California limited liability partnership is inconsequential. See El Cid, Ltd. v. N.J. Zinc Co., 575 F. Supp. 1513, 1518-19 (S.D.N.Y. 1983). And where, as here, regulation of conduct is at issue, the state where the alleged tort took place has the greater interest. See GFL Advantage Fund, Ltd. v. Colkitt, No. 03 Civ. 1256 (JSM), 2003 WL 21459716, at *3 (S.D.N.Y. June 24, 2003); see also Roselink Investors, L.L.C. v. Shenkman, 386 F. Supp. 2d 209, 225 (S.D.N.Y. 2004) ("A fraudulent conveyance statute is conduct regulating rather than loss allocating." (internal citation and quotation marks omitted)).

-6-

Here, the alleged tort occurred in New York. Accordingly, New York has the greatest interest in this litigation, and New York law defines the property interest—if any—that Seyfarth Shaw received.

III.     Unfinished Business Under New York Law

         To prevail on its claims against Seyfarth Shaw, the Trustee must demonstrate that Seyfarth Shaw received a property interest of Thelen's. To that end, the Trustee seeks to recover Thelen's purported ownership interest in profits from its former clients' hourly fee matters that were pending when Thelen dissolved. The Trustee also seeks to recover profits from pending contingency fee matters. In opposing these claims, Seyfarth Shaw contends that New York law does not recognize a law firm's property interest in pending hourly fee matters. It is this Court's task "to ascertain what the state law is, not what it ought to be." Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497 (1941). Accordingly, without guidance from the state's highest court, this Court must "predict how the New York Court of Appeals would resolve the question[.]" Amerex Grp., Inc. v. Lexington Ins. Co., 678 F.3d 193, 200 (2d Cir. 2012) (quoting Highland Capital Mgmt. LP v. Schneider, 460 F.3d 308, 316 (2d Cir. 2006)) (internal quotation marks omitted).

         The Trustee bases his claims on the "unfinished business doctrine," which is "[t]he general rule that the business of a partnership that is unfinished on the date the partnership dissolves is an asset of the partnership, and must be concluded for the benefit of the dissolved partnership." Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP, ---B.R.----, 2012 WL 1918705, at *11 (S.D.N.Y. May 24, 2012) ("DSI") (citing Stem v. Warren, 227 N.Y. 538 (1920)). The seminal case applying this doctrine to law partnerships is Jewel v. Boxer, 156 Cal.

App. 3d 171, 179 (Cal. App. 1 Dist. 1984), where the court noted that "each former partner has a duty to wind up and complete the unfinished business of the dissolved partnership."[2] The court also observed that "[t]he Uniform Partnership Act unequivocally prohibits extra compensation for postdissolution services, with a single exception for surviving partners." Jewel, 156 Cal. App. 3d at 176-77 (citing Cal. Corp. Code § 15018(f) (since repealed)).  Applying this "no compensation" rule, the court in Jewel held that "absent a contrary agreement, any income generated through the winding up of unfinished business is allocated to the former partners according to their respective interests in the partnership." Jewel, 156 Cal. App. 3d at 176.  New York's Partnership Law is a codification of the Uniform Partnership Act ("UPA"), and the "no compensation" rule applies in New York. See DSI, 2012 WL 1918705, at *5 (citing N.Y. P'ship Law § 1); see also N.Y. P'ship Law § 40(6). After Jewel, some courts have characterized a dissolved law firm's unfinished business as a "partnership asset." See, e.g., In re Brobeck, Phleger & Harrison LLP, 408 B.R. 318, 333 (Bankr. N.D. Cal. 2009).  The question here is whether New York law sanctions the expansion of such a rule to a dissolved law firm's pending hourly fee matters.

Under New York law, it is well settled that "[a]bsent an agreement to the contrary, pending contingent fee cases of a dissolved partnership are assets subject to

---

[2] Jewel involved a four-partner law firm handling principally personal injury and workers' compensation cases that dissolved in 1977.  Thereafter, the partners split into two two-partner law firms, with clients retaining the attorney who handled their matter at the old firm.  Because they had no written partnership agreement, the partners disputed the allocation of attorneys' fees from these cases.  Reversing the trial court, an intermediate appellate court concluded that the profits from this "unfinished business" were owed to the former partners in proportion to their partnership interests. Jewel, 156 Cal. App. 3d at 174-76.  Over the last three decades, courts have cited Jewel reflexively and uncritically.  Thus, from modest beginnings in a dispute involving a small Alameda County general practice firm, the Jewel doctrine has grown to ensnare some of the largest law firms in the United States.

distribution." Santalucia v. Sebright Transp., Inc., 232 F.3d 293, 297 (2d Cir. 2000) (emphasis added). But New York courts have not expanded the unfinished business doctrine to reach pending hourly fee matters. Rather, the only New York court to consider whether a debtor law firm possesses a property interest in its unfinished hourly fee matters concluded that it does not. In Sheresky v. Sheresky Aronson Mayefsky & Sloan, LLP, 35 Misc. 2d 1201(A), 2011 WL 7574999, at *5 (N.Y. Sup. Ct. Sept. 13, 2011), the state court declined to expand the unfinished business doctrine to pending hourly fee matters, reasoning that "[i]t is logical to distinguish between contingency fee arrangements and cases which are billed on the basis of hourly work." Citing the New York Rules of Professional Conduct, the court refused "to recognize a cause of action for unfinished business for hourly fee cases which has, hitherto, not been recognized by the New York courts." Shereksy, 2011 WL 7574999, at *6.

Although Sheresky is not binding authority, a New York trial court's interpretation of New York law is entitled to "great weight." In re Brooklyn Navy Yard Asbestos Litig., 971 F.2d 831, 850 (2d Cir. 1992) (internal quotation marks omitted). And this Court finds Sheresky persuasive. Unlike in the contingency fee context, applying the unfinished business doctrine to pending hourly fee matters would result in an unjust windfall for the Thelen estate, as "compensating a former partner out of that fee would reduce the compensation of the attorneys performing the work." Shereksy, 2011 WL 7574999, at *5. Such an expansion of the doctrine would violate New York's public policy against restrictions on the practice of law. See Cohen v. Lord, Day & Lord, 75 N.Y.2d 95, 96 (1989). Indeed, recognizing a property interest in pending hourly fee matters would clash directly with New York's Rules of Professional Conduct, which state:

> A lawyer shall not divide a fee for legal services with another lawyer who is not associated in the same firm unless: (1) the division is in proportion to the services performed by each lawyer or, by a writing given to the client, each lawyers assumes joint responsibility for the representation; (2) the client agrees to the employment of the other lawyer after a full disclosure that a division of fees will be made, including the share each lawyer will receive, and the client's agreement is confirmed in writing; and (3) the total fee is not excessive.

22 NYCRR 1200.0, DR 1.5(g).

When confronted with two apparently conflicting statutes, New York courts adopt "any fair construction" that yields "a reasonable field of operation for both statutes." Cnty. of St. Lawrence v. Shah, 945 N.Y.S.2d 443, 446 (3d Dep't 2012) (quoting Con. Edison Co. of N.Y., Inc. v. Dep't of Envtl. Conservation, 71 N.Y.2d 186, 195 (1988)) (internal quotation marks and alteration omitted).  Although the Rules of Professional Conduct lack the force of law, cf. Niesig v. Team I, 76 N.Y.2d 363, 369 (1990), New York courts interpret other laws to harmonize with them where possible.  See Sheresky, 2011 WL 7574999, at *5.

Further, recognizing a property interest in pending hourly fee matters would contravene New York law's treatment of post-dissolution contingency fee matters.  Although New York cases deem pending contingency fee matters to be "assets" of a dissolved firm, they hold that a dissolved firm has "no cognizable property interest in [a] fee" where the "successful settlement of a pending contingent fee case post-dissolution is due to a surviving partner's post-dissolution efforts, skill and diligence[.]"  Santalucia, 232 F.3d at 298 (quoting Shandell v. Katz, 629 N.Y.S.2d 437, 439 (1st Dep't 1995)) (internal quotation marks omitted).  "Thus, in a case where a lawyer departs from a dissolved partnership and takes with him a contingent fee case which he then litigates to settlement, the dissolved firm is entitled only to the value of the case at the date of dissolution, with interest."  Santalucia, 232 F.3d at 298 (citing Kirsch v. Leventhal,

-10-

586 N.Y.S.2d 330, 333 (3d Dep't 1992)).  In an hourly fee case, unlike a contingency fee case, all post-dissolution fees that a lawyer earns are due to that lawyer's "post-dissolution efforts, skill and diligence[.]"  Shandell, 629 N.Y.S.2d at 439 (quoting Kirsch, 586 N.Y.S.2d at 333) (internal quotation marks omitted).  Accordingly, New York law does not recognize a debtor law firm's property interest in pending hourly fee matters.

And recognizing such a property interest would have bizarre consequences.  If such an interest exists, it becomes property of the estate upon the filing of a bankruptcy petition.  See 11 U.S.C. § 541.  It would appear, then, that the Bankruptcy Code empowers a debtor law firm to sell its pending hourly fee matters to the highest bidder.  See 11 U.S.C. § 363 ("The trustee, after notice and hearing, may use, sell, or lease . . . property of the estate[.]").  When this Court asked the Trustee whether a debtor firm could auction off its pending matters, the Trustee was unable to answer definitively.  (Hearing Transcript, dated July 31, 2012 ("Hr'g Tr.") at 31 (12 Civ. 1364, ECF No. 17).)  And the Trustee's reticence is understandable, as allowing such a sale of "property" is inconsistent with a client's right to choose attorneys.  See Demov, Morris, Levin & Shein v. Glantz, 53 N.Y.2d 553, 556 (1981) ("[It is] well rooted in our jurisprudence [] that a client may at any time, with or without cause, discharge an attorney[.]").  Similarly, under the Trustee's interpretation of the unfinished business doctrine, it is unclear whether a client who discharges a debtor law firm and transfers his case to a new firm violates the automatic stay.  See 11 U.S.C. § 362 (prohibiting "any act to obtain possession of property of the estate . . . or to exercise control over the property of the estate").

These unworkable results militate powerfully against extending the unfinished business doctrine to hourly fee matters.  Perhaps for this reason, New York courts have

-11-

endeavored to cabin the doctrine, holding that "[r]etainers from former clients on new matters—even matters, like appeals, that are related to finished representations— . . . [are] 'new business' and not subject to the duty to account." DSI, 2012 WL 1918705, at *11 (citing Talley v. Lamb, 100 N.Y.S.2d 112, 117-18 (N.Y. Sup. Ct. 1950)). Given this background, characterizing unfinished hourly fee matters as "property" makes little sense.

In arguing that pending hourly fee matters are nevertheless Thelen property, the Trustee relies heavily on Stem v. Warren, 227 N.Y. 538 (1920), a hoary case involving architecture partnerships. According to the Trustee, Stem stands for the proposition that a partnership's executory contracts may be partnership property even if they are terminable at will. But the Trustee's reading of the case is overbroad. Rather, "under Stem, if an executory contract with a third party contemplates that it should survive dissolution, it remains a joint venture asset and the co-venturers have an obligation to perform with the concomitant right to its benefits." Scholastic, Inc. v. Harris, 259 F.3d 73, 89 (2d Cir. 2001). Here, Thelen's hourly fee matters cannot have contemplated post-dissolution survival without infringing a client's right to terminate an attorney at will. See Demov, Morris, Levin & Shein, 53 N.Y.2d at 556. Although the contract in Stem was, by its terms, terminable at will, see 227 N.Y. at 544, contracts for legal services are categorically different from architecture contracts. Clients repose "ultimate trust and confidence" in their attorneys. In re Cooperman, 83 N.Y.2d 465, 472 (1994). "The attorney's obligations, therefore, transcend those prevailing in the commercial market place," and "[t]he contract under which an attorney is employed by a client has peculiar and distinctive features[.]" Cooperman, 83 N.Y.2d at 472-73 (quoting Martin v. Camp, 219 N.Y. 170, 172 (1916)) (internal quotation marks and citations omitted).

A pending client matter is not an ordinary article of commerce.  Contrary to DSI, an hourly fee matter is not akin to "a Jackson Pollack [sic] painting" that a departing attorney "rip[s] off the wall of the reception area[.]"  DSI, 2012 WL 1918705, at *7.  The client, not the attorney, moves a matter to a new firm.  Thus, the attorney-client relationship is unique, and applying Stem to hourly fee legal service contracts would undermine it.  New York law does not countenance such a result.  See Shresksy, 2011 WL 7574999, at *5-*6.  In Cohen, the New York Court of Appeals drew on an ethics opinion from the New York County Lawyers' Association to emphasize New York's commitment to client autonomy:  "Clients are not merchandise.  Lawyers are not tradesmen. . . . An attempt, therefore, to barter in clients, would appear to be inconsistent with the best concepts of our professional status."  Cohen, 75 N.Y.2d at 98 (internal quotation marks omitted).  This policy applies just as forcefully to client matters.

The Trustee also cites cases from other jurisdictions for the proposition that "every other court confronted with this issue . . . has held that pending cases, regardless of whether they are hourly-fee cases or contingent-fee matters [are] . . . assets of the partnership subject to post-dissolution distribution."  In re Labrum & Doak, LLP, 227 B.R. 391, 408 (Bankr. E.D. Pa. 1998) (citing Sufrin v. Hosier, 896 F. Supp. 766, 769 (N.D. Ill. 1995)).  But the cases on which the Trustee relies do not represent a consensus view.  See Shresksy, 2011 WL 7574999, at *5-*6.  In DSI, the district court nonetheless gave substantial weight to these decisions on the ground that "New York courts must harmonize their rulings with those of other UPA jurisdictions by statute[.]"  DSI, 2012 WL 1918705, at *15 (citing N.Y. P'ship Law § 4(4)).  This Court respectfully disagrees.

The purpose of UPA is to harmonize partners' duties regarding partnership property, not to delineate the scope of such property. See Welman v. Parker, 328 S.W.3d 451, 458 (Mo. Ct. App. 2010) (explaining that state common law, and not the Uniform Partnership Law, determines "which party is entitled to the contingent fee"); see also DSI, 2012 WL 198705, at *13 ("There is surprisingly little New York authority on how a court is to determine what property is within or without a partnership.") (quoting Sriraman v. Patel, 761 F. Supp. 2d 7, 18 (E.D.N.Y. 2011)); cf. Butner v. United States, 440 U.S. 48, 55 (1979) ("[T]here is no reason why [property] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). The Trustee identifies no provision of UPA that addresses whether pending hourly fee matters are partnership property. And, for the reasons discussed above, recognizing a property right in unfinished hourly fee matters conflicts with New York's strong public policy in favor of client autonomy and attorney mobility. See Cohen, 75 N.Y.2d at 98; see also Denburg v. Parker Chapin Flattau & Klimpl, 82 N.Y.2d 375, 381-82 (1993). Accordingly, the Trustee's contention that the court in Sheresky, 2011 WL 7574999, at *6, failed to engage in the requisite analysis of out-of-state case law is without merit. (Hr'g Tr. at 28.) To the extent that the out-of-state cases suggest a result that is irreconcilable with New York policy, they are not reliable indicators of New York law.

Thus, under New York law, a dissolved law firm's pending hourly fee matters are not partnership assets. And because the Trustee's complaint against Seyfarth Shaw fails to distinguish between pending contingency fee matters and hourly fee matters, the complaint is deficient. See Iqbal, 556 U.S. at 678. Accordingly, Seyfarth Shaw's motion for judgment on the pleadings is granted, and the Trustee's claims against Seyfarth Shaw are dismissed. If the

-14-

Trustee intends to pursue claims against Seyfarth Shaw regarding Thelen's pending contingency fee matters, the Trustee must amend his complaint.

IV.     Unfinished Business under California Law

In contrast to Seyfarth Shaw, Robinson & Cole concedes for the purposes of its motion to dismiss that California law governs any property interest that it received. Robinson & Cole argues that, notwithstanding Jewel and the cases following it, California law no longer recognizes a dissolved law firm's property right in its pending hourly fee matters. Robinson & Cole also maintains that, even assuming the existence of such a property interest, the interest was never transferred to Robinson & Cole. The Trustee responds that California law recognizes pending hourly fee matters as assets, and that Thelen transferred those assets to Robinson & Cole when its partners executed the Jewel Waiver.

Assuming that pending hourly fee matters are "assets," Thelen fraudulently transferred those assets when its partners adopted the Jewel Waiver on the eve of dissolution without consideration. See In re Heller Ehrman LLP, No. 08-32514DM, 2011 WL 1539796, at *5 (Bankr. N.D. Cal. April 22, 2011); see also 11 U.S.C. § 101(54) (a "transfer" is "each mode, direct or indirect, . . . of disposing of or parting with—(i) property; or (ii) an interest in property"). Under section 550(a) of the Bankruptcy Code, the Trustee may recover the value of fraudulently transferred property from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). And when Thelen's former partners brought pending matters to Robinson & Cole, they transferred that "property" to their new firm. Thus—assuming that pending hourly fee matters are "property"—Robinson & Cole may be liable as an "immediate or

-15-

mediate transferee" of those assets. See 11 U.S.C. § 550(a)(1). That Robinson & Cole owes no

fiduciary duties to Thelen is irrelevant to its status as a transferee. See Brobeck, 408 B.R. at 339

n.31

      The central question, then, is whether California law recognizes a dissolved law

firm's pending hourly fee matters as partnership assets. In Jewel and the cases following it,

California courts held that such matters were, indeed, assets of a dissolving firm. See Jewel, 156

Cal. App. 3d at 176; see also Rothman v. Dolin, 20 Cal. App. 4th 755, 758-59 (Cal. App. 2 Dist.

1993). And Jewel applies to registered limited liability partnerships like Thelen. See Fox v.

Abrams, 163 Cal. App. 3d 610, 616 (Cal. App. 2 Dist. 1985) (extending the Jewel doctrine to the

dissolution of a law corporation because Jewel "was not based solely on partnership law but also

cited 'sound policy reasons' for its decision"). However, Robinson & Cole argues that

California's enactment of the Revised Uniform Partnership Act ("RUPA") in 1994 abrogated the

Jewel doctrine. Jewel and its progeny relied on UPA's "no compensation" rule. See Jewel, 156

Cal. App. 3d at 176-77; see also Rothman, 20 Cal. App. 4th at 757. But RUPA abolished the "no

compensation" rule, providing instead that a partner is entitled to "reasonable compensation for

services rendered in winding up the business of the partnership." Cal. Corp. Code § 16401(h).

      Robinson & Cole's argument is persuasive. In applying the unfinished business

doctrine to law partnerships, Jewel relied expressly on UPA's "no compensation" rule, reasoning

that "[t]he Uniform Partnership Act unequivocally prohibits extra compensation for

postdissolution services, with a single exception for surviving partners." Jewel, 156 Cal. App.

3d at 176-77. But RUPA transformed the law on which Jewel relied and eroded the theoretical

underpinnings of the Jewel doctrine. Because RUPA entitles partners of a dissolving firm to

"reasonable compensation for services rendered in winding up the business of the partnership," Cal. Corp. Code § 16401(h), there is no basis to require Thelen's former partners to remit all profits earned from former Thelen matters to the Thelen estate.[3]

Nevertheless, the former Thelen partners' post-RUPA entitlement to "reasonable compensation" does not necessarily mean that Robinson & Cole did not receive Thelen "assets." The question of "reasonable compensation" is fact-intensive, and this Court cannot, on a motion to dismiss, determine whether the former Thelen partners are entitled to retain all profits earned from pending hourly fee matters. Robinson & Cole cites Jacobsen v. Wikholm, 29 Cal. 2d 24, 30-31 (1946), for the proposition that "reasonable compensation" includes profits resulting from a partner's post-dissolution skill and effort, except to the extent that those profits result from the use of the dissolved partnership's capital. Yet, notwithstanding Jacobsen, the fact-bound "reasonable compensation" inquiry may not be resolved on a motion to dismiss. See Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) ("Fact-specific questions cannot be resolved on the pleadings." (internal alterations, quotation marks, and citations omitted)). Thus, Robinson & Cole's liability turns on the extent to which the former Thelen partners received remuneration beyond "reasonable compensation." This question can only be resolved on a more fully developed record.

In arguing that dismissal of the claims against it is warranted, Robinson & Cole advances many of the same policy arguments proffered by Seyfarth Shaw. But these arguments are less persuasive in the context of California law because California courts have rejected them.

---

[3] This Court declines to address Robinson & Cole's argument—raised only in a footnote—that the Trustee fails adequately to allege Thelen's insolvency at the time of the Jewel Waiver. See Bryant Park Capital, Inc. v. Jelco Ventures, No. 05 Civ. 8702 (GEL), 2007 WL 2119486, at *1 (S.D.N.Y. July 23, 2007) (declining to consider argument raised only in footnote).

See Fox, 163 Cal. App. 3d at 616 (discussing "sound policy reasons" supporting Jewel doctrine);

see also Jewel, 156 Cal. App. 3d at 179. And New York's commitment to attorney mobility

appears to be stronger than California's. Compare Cohen, 75 N.Y.2d at 98, with Howard v.

Babcock, 6 Cal. 4th 409, 422-23 (1993) (declining to follow Cohen).

        In sum, RUPA's "reasonable compensation" rule undermines the Jewel doctrine,

which applied the older "no compensation" rule. Nevertheless, California law may still

recognize a dissolving firm's pending hourly fee matters as "assets." Specifically, to the extent

that Robinson & Cole earned profits from former Thelen matters exceeding "reasonable

compensation," California law dictates that those profits belong to Thelen. Accordingly,

Robinson & Cole's motion to dismiss the Trustee's claims is denied.

V.      Interlocutory Appeal

        A district court may certify an order for interlocutory appeal if "the district judge

'is under the opinion that such order involves a controlling question of law as to which there is

substantial ground for difference of opinion and that an immediate appeal may materially

advance the ultimate termination of the litigation.'" United States v. Culbertson, 598 F.3d 40, 45

(2d Cir. 2010) (quoting 28 U.S.C. § 1292(b)). The question whether a dissolved law firm's

pending hourly fee matters are partnership assets under New York law and California law is

controlling. And "reversal of [this] opinion, even though not resulting in dismissal, could

significantly affect the conduct the action[.]" Primavera Familienstifung v. Askin, 139 F. Supp.

2d 567, 570 (S.D.N.Y. 2001).

        These issues impact a large number of cases, and they present substantial grounds

for difference of opinion. The DSI court recently certified its decision for interlocutory appeal,

-18-

and that decision implicates many of the controlling issues in this Memorandum & Order. See Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP, Nos. 11 Civ. 5994 (CM) et seq., 2012 WL 2952929, at *7-*8 (S.D.N.Y. July 18, 2012). Further, certification of these questions to the New York Court of Appeals and the California Supreme Court may be warranted because those high courts have "not squarely addressed" the issues, and the scope of the unfinished business doctrine is of great importance to both the legal profession and clients. Joseph v. Athanasopoulos, 648 F.3d 58, 67 (2d Cir. 2011) (quoting 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co., 634 F.3d 112, 125-26 (2d Cir 2011)). Notwithstanding its humble beginnings, some lower courts have applied the Jewel doctrine expansively, with untoward consequences for the bar and clients. In this Court's view, there is good reason to believe that the highest courts of New York and California would decline to follow suit. In these circumstances, "the prompt resolution" of these issues on appeal will promote judicial economy and doctrinal clarity. Mohawk Indus., Inc. v. Carpenter, 130 S. Ct. 599, 607 (2009). Accordingly, this Court sua sponte certifies this order for interlocutory appeal.

<u>CONCLUSION</u>

For the foregoing reasons, Seyfarth Shaw LLP's motion for judgment on the pleadings is granted, and Robinson & Cole LLP's motion to dismiss is denied. This Court certifies this order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Any party seeking leave for the Court of Appeals to hear an interlocutory appeal shall direct its application to the Court of Appeals within ten days. <u>See</u> 28 U.S.C. 1292(b). This Court hereby stays all proceedings in the district court pending a decision on certification from the Court of Appeals.

The Clerk of the Court is directed to file this Memorandum & Order in both 11 Civ. 8967 and 12 Civ. 1364. The Clerk of the Court is further directed to terminate the motions pending at ECF No. 13 in 11 Civ. 8967 and ECF No. 9 in 12 Civ. 1364.


Dated: September 4, 2012
       New York, New York

                              SO ORDERED:


                              _____
                              WILLIAM H. PAULEY III
                              U.S.D.J.

*Counsel of Record:*

Howard P. Magaliff, Esq.
DiConza Traurig Magaliff LLP
630 Third Avenue, 7th Floor
New York, NY 10017
*Counsel for Plaintiff*

Christopher J. Major, Esq.
Meister Seelig & Fein LLP
Two Grand Central Tower
140 East 45th St., 19th Fl.
New York, NY 10017
*Counsel for Robinson & Cole LLP*

Robert W. Dremluk, Esq.
Seyfarth Shaw LLP
620 Eighth Avenue
New York, NY 10018

Thomas Feher, Esq.
Thompson Hine LLP
127 Public Square, Suite 3900
Cleveland, OH 44114
*Counsel for Seyfarth Shaw LLP*